## Rearick's Executors *versus* Rearick.

1. Oral proof to vary or affect an article of agreement for the sale of land, is to be confined to what occurred at the execution of it.

2. Subsequent declarations of one of the parties can only be received in corroboration of the prior arrangements previously established by proof; and are not to be accepted as, of themselves, competent to establish a modification of the writing.

ERROR to the Common Pleas of *Union county*.

This was an action of covenant brought by Christian Gross and John Swinehart, executors of the will of *Henry* Rearick, deceased, against Christian Rearick, on an agreement in writing between the plaintiffs' testator and the defendant, for the recovery of the purchase-money of a certain tract of land. The plea was covenants performed.

The material question was, whether the declarations of Henry Rearick, made previous to the execution of the agreement, and at different times, during thirteen years subsequent to the execution of it, were sufficient to prevent plaintiffs from sustaining the action.

The articles were dated 10th March, 1832, and were *under seal.* They were signed by Henry Rearick and Christian Rearick, and by them, Henry Rearick, in consideration of eight dollars per acre, agreed to sell and convey to Christian Rearick a tract of land in Centre township, Union county. The agreement contained, *inter alia*, a provision as follows:—"And the said Christian Rearick for himself, his heirs, and assigns, doth covenant and grant to and with the said Henry Rearick, his heirs and assigns, that he the said Christian Rearick shall and will pay the whole amount of what arises from said described tract of land, one year after the death of said Henry Rearick, and no interest shall be calculated on said money." Solomon Engel signed as a witness to the agreement. The *plaintiffs* showed title in Henry Rearick and his possession till Christian took possession under the agreement. Deed dated 7th January, 1845, from Henry Rearick to Christian for the land, to be delivered after his death. They also gave in evidence the will of Henry Rearick, dated 7th January, 1845. Probate and letters testamentary, 19th August, 1845. It was stated, *inter alia*, in the will: "As for my sons, Henry, Conrad, and Christian, they have been provided for in the purchase of lands from me, under articles of agreement, which I wish to have carried out and fulfilled on their, as well as my part, by my executors. * * * Deeds, bearing even date herewith, have been duly executed and acknowledged to said Henry Rearick, Jr., Conrad, and Christian Rearick, for the several tracts of land on which they now reside, and which they severally purchased from me some years ago, and prior to my last marriage; which deeds are to be delivered at my death, if not before."

Release of dower given in evidence. Plaintiff also proved that the deed and release were tendered before suit brought.

After plaintiffs had closed, it was offered, on the part of defend-

ant, to prove by Conrad Rearick, that he was present when the bargain for the land mentioned in the agreement was made between Henry and Christian Rearick; that it was agreed that Christian should have this land, as his portion of his father's estate, at $8 per acre; but the title papers were so arranged and kept, that if Henry Rearick should come in want in his lifetime, he would have a right to resort to this land, in the hands of his son Christian, for his own support; that it was then agreed Christian should give a bond and mortgage, payable after the old man's death, for the principal sum without interest, and if, on an equal distribution of his property among his children, it should be less than Christian's share, the balance was to be made up to him, and, if more, he was to pay the surplus to the general fund. That the property Henry Rearick then owned would, on an equal distribution among his eight children, amount to more, to the share of each, than the price of this land; that the proposition was made by his father and assented to by Christian; that Henry Rearick continued to tell the witness, *at different times, during thirteen years subsequent to making the agreement*, that such was the original understanding and agreement between them; that he was present when the deed and will given in evidence by plaintiffs *were executed*, and that his father then repeated the declarations with respect to the agreement with Christian; and that, in accordance with it, Christian was to have the land free and clear, and without payment of any purchase-money, as his portion of his estate; that Henry Rearick himself destributed, in his lifetime, the greater part of his estate to his children and grand-children; and that he had made an advancement to the witness and several other of his children and grand-children; that after the making of the will and deed, Henry Rearick frequently told witness that Christian was to have the land without payment of the purchase-money, according to their original agreement.

Plaintiffs objected, 1st. Because defendant does not offer to prove what took place at the writing of the agreement. 2d. The evidence offered, tends to contradict and not to explain the agreement. 3d. It is not evidence under the pleading, and not embraced in the notice of special matter. 4th. Irrelevant and inadmissible. 5th. Plaintiffs object to all the declarations of testator subsequent to the writing of the agreement, unless offered to corroborate what took place when the agreement was written.

The court overruled the objections and admitted the evidence, and plaintiffs excepted.

Conrad Rearick, sworn.—I was living with my father, and Christian came there, and they made a bargain for the land for $8 an acre. Christian was to give him a bond or mortgage for the money—not to pay any thing for a year after the old man's death. The old man said, if the other shares would not come as

high as the land, Christian was to pay back. This is all I know of the bargain. He said if Christian's did not come as high as the others' shares, he was to get some to it yet. This was *before* they went to Squire Engel's to have the agreement written. Can't tell how soon after that they went to Engel's; I was not along at Engel's. Can't tell whether they started together to Engel's. They did not start together. Christian got possession the same spring they made the bargain. Don't remember the time of year. When they made the bargain, they said they would go to Squire Engel to write it. The old man said how it should be paid, and Christian agreed to it.

Defendant now offered to prove by this, and other witnesses, the declarations of Henry Rearick admitting, after the agreement was written, that what the witness has stated was the agreement, and continued so to admit it to the time of his death.

Plaintiffs did not object to what passed at the time the agreement was written, but to all subsequent declarations, as the defendant has failed to prove an agreement different from that written by Squire Engel, made about the time it was written. Also because the evidence is irrelevant.

Objection overruled, and plaintiffs excepted.

The witness then, after stating that his father had often told him, after the agreement was written, that the agreement was as he had stated it, proceeded as follows, to wit:—

I was present when Mr. Weaver wrote father's will, *and it and the deed were executed.* They had a bond there (shown) that Christian was to sign. Mr. Weaver had it, and asked the old man whether he wanted Christian to sign it; and he replied that he should not—that the land he should have for his share right off—that Christian should not pay any thing unless he should come in want, and then Christian would have to pay back some to him; that in case he did not need any in his lifetime, Christian should have the land for his share. He told me the same thing often after the will was written.

Cross-examined.—The bargain was made in 1832, but can't tell the time of year, or how long before Engel wrote the agreement. He told me afterwards that Engel had put their bargain into writing. Christian, at the time of the bargain, lived about five miles from his father. I think Christian, after making the bargain, went home; father did not go with him. Can't say whether they fixed on a time to meet at Engel's. Christian did not move on the land in 1832; there was no house on it then. Got possession as soon as it was surveyed.

Michael H. Weaver, sworn.—Defendant offered to prove, by this witness, that on the 7th of January, 1845, he drew the will and deed, already given in evidence by plaintiffs, for Henry Rearick, Sr.; that at that time Henry Rearick told him that Christian had the

[Rearick's Executors *v.* Rearick.]

land embraced in the agreement and deed, as his portion or share of his estate, and that he was not to give bond for the purchase-money, or be called on for the payment of the price of the land, unless he (Henry) should come to want in his lifetime ; and was to have the land with that reservation, free and clear of any charge. This was offered in corroboration of the testimony already given, and to show how the agreement was understood by *Henry Rearick*.

Plaintiffs objected, 1st. That there was no evidence of an agreement between Henry Rearick and his son Christian, other than that reduced to writing by Squire Engel; and that needed no corroboration. 2d. That it was not evidence for the purpose for which it was offered. 3d. Irrelevant. 4th. Because it tended to contradict the will and the written agreement.

Court overruled the objections, and plaintiffs excepted.

Mr. Weaver then in substance testified, viz. : I wrote the will for Henry Rearick, and it and the deed were executed in my presence, on the 7th January, 1845. I made the calculation on Christian's land, at $8 per acre, and asked the old man if Christian was to pay this, and he replied, no ; not unless he should come to need before his death, and then Christian was to help, along with the rest. He told me that the article of agreement between him and Christian was made in contemplation of his marrying, to cut out his wife of dower, as I understood it. While I was writing the will, I asked him about Conrad, Henry, and Christian. He said Conrad had his in land, Henry had land also. I asked how about Christian ? He replied that he had land too—had put it to him at $8 per acre, for his share or *erbschaft*. I think a blank bond and mortgage were there.

Cross-examined.—Christian was not present, nor was his (Henry's) wife. Henry lived in Adamsburg, and this was at Conrad's. He was upwards of seventy years old.

Defendant now offered to show, that $8 an acre was the full value of the land when Christian got it under the bargain, as corroborative of the general defence.

Plaintiffs objected, and court overruled objection.

Defendant then called several witnesses who testified that the land, at the time Christian got it, was worth between $7 and $8 per acre.

Conrad Rearick, again.—My father had eight children.

Defendant offered to prove the extent of Henry Rearick's property, and the manner he disposed of it, at and subsequent to the time of the bargain and agreement between him and Christian, among his children and grand-children, and the advancement he made to different ones, for the purpose of showing that, upon an equal distribution of his property among his children, in accordance with his agreement with Christian, Christian's share would be more than the price of the land now sought to be recovered, and to show

that the plaintiffs have no right to recover, and also to explain the written agreement, the deed, and the will given in evidence by plaintiffs.

Plaintiffs objected, 1st. Because not evidence for that purpose. 2d. Irrelevant.

Court overruled objections, and plaintiffs excepted.

The witness then stated that his father, in 1832, had one farm worth about $5000; one worth about $1800 or $1900; one in Juniata county, for which he paid $2600. He had a stock worth $800 or $900; that he, the witness, got the first at $5000, on his paying $4000, and keeping the old people, for the balance, which the old man called his share; that Henry got part of the second farm, paid the old man $1000, but can't say whether his share was in it or not.

The defendant now offered an assignment of a deed from Henry Rearick, Sr., to Henry Rearick, Jr., dated 7th January, 1845, in consideration of $2000, for the same purpose, to show what estate he had and the distribution thereof.

Plaintiffs objected, and objection overruled, and plaintiffs excepted.

Defendants close, and plaintiffs call—

Solomon Engel, sworn.—(Articles of agreement shown.) I drew this agreement. There was no one but Henry Rearick and Christian present. It contains all that was communicated to me, to the best of my recollection. I wrote it down all as they told me, and read it over to them; and what they did not understand, I explained to them. I know the land, and think that in 1832 it would have brought more if sold as woodland than as clear. All the buildings put up on it, by Christian, may be worth $300. I have assisted in settling the estate, and, from appearance now, the estate will not pay the debts. It stands about even now, without paying Paul. Heim and Abraham Rearick any thing.

Israel Feik.—Suppose all the buildings put up by Christian on the land worth about $300.

Verdict was rendered for defendant.

It was, *inter alia,* assigned for error, that

The court erred in admitting the evidence contained in plaintiffs' several bills of exceptions; and in referring the parol testimony to the jury to determine as to how Henry Rearick intended the written agreement to be carried out.

The case was argued by *Slenker* and *Miller,* for plaintiffs in error.—That parol evidence was not admissible to reform a written instrument, except in case of fraud or trust: 1 *Bin.* 616; 1 *Ser. & R.* 464; 1 *Rawle* 108, 111; 5 *Ser. & R.* 421; 1 *Pa. Rep.* 417; 10 *Ser. & R.* 342. It is to be confined to the time of executing the instrument: 2 *Barr* 14; 3 *id.* 255. It is not competent to

[Rearick's Executors *v.* Rearick.]

give evidence by the scrivener as to what the testator meant by devises contained in a will: 6 *Watts* 345; 7 *Ser. & R.* 111; 6 *Conn. Rep.* 270; 2 *Starkie Ev.* 762; 5 *Desaussure* 215, Rothmaler *v.* Meyers.

*Merrill* and *Casey*, for Christian Rearick, defendant in error.

The opinion of the court was delivered July 20th, 1850, by

BELL, J.—It is much to be regretted the leading facts to be proved by the defendant's witness, Conrad Rearick, were either inaccurately comprehended or unfairly stated, on the first trial of this cause, and on the former argument in this court. Had these facts been then presented as they have been since proved, the trouble and expense of a second trial would have been avoided, and something, at least, of the bitterness, which unfortunately so often marks the progress of a family quarrel, escaped. If, for the sake of a temporary triumph, the defendant presented an uncandid view of his proposed defence, it is a fault which will, in some degree, be punished by the increased costs of the investigation : if he was himself misled by a misapprehension of it, it was a misfortune, not wholly untinged by fault ; for in litigation, a neglect correctly to ascertain the facts to be proved is, of itself, reprehensible *laches*.

On the first trial, the defendant offered to prove by Conrad Rearick, that he was present when the written agreement, given in evidence by the plaintiff, was made between his father and his brother Christian, and that it was agreed Christian should have the land in question, as his portion of the father's estate, subject to conditional payment, as was afterwards testified by Conrad. The proffer was to show this, by oral proof of the understanding *then* declared as existing between the vendor and vendee. On the argument in this court, it was strongly insisted by the counsel of the defendant in error, that the proposed proof related to prior conventions and negotiations, which were, of course, merged in the subsequent written agreement. This asseveration was combated by the opposing counsel, and the dispute thus engendered gave birth to the observation made in the opinion of this court deciding the case, that, in ascertaining the question for adjudication, we were bound to accept the offers made by the defendant below, as founded in truth, and capable of proof. Upon this presumption, the several bills of exceptions were considered, and the determination was made to turn upon the assumed, or rather asserted. fact, that the oral declarations of the parties and the understanding ascertained by them, were contemporaneous with the execution of the written instrument upon which this action is founded. The admissibility of such evidence, it was pointed out, was by way of exception to the general rule which forbids the introduction of verbal declarations in modification of written instruments ; and it was held that these

being received, drew with them the subsequent declarations of the testator on the same subject ; not as explanatory of the deed or will, but in corroboration of the original agreement, resting in parol.

On the second trial, the offer was repeated in substance, though perhaps not with the same precision of language, and the court, therefore, properly admitted the proffered testimony.   But the witness wholly failed to prove a verbal arrangement concluded at the same moment with, or, as the usual phrase is, at or about the time of the execution of the written agreement, by which it was proposed the latter should be modified, and its obligation requiring payment of the purchase-money extinguished in a certain event. On the contrary, so far as we may judge from evidence so vague and unsatisfactory, the conversations detailed by the witness were not held on the same day the article between the father and son was executed.   All we know with certainty is, that the negotiation spoken of occurred before the consummation of the arrangement by the execution of the writing ; but whether it was one day or one month previous, we are left without even ground for conjecture. Now, in the somewhat unsteady course of decision upon this vexed point of evidence, if any principle has been adhered to with tenacity, it is, that oral proof to vary or affect a written instrument must be confined to what occurred at the execution of it : Billinger *v.* Eckert, 16 *Ser. & R.* 424 ; Stine *v.* Sherk, 1 *W. & Ser.* 195.  Even thus restricted, it is acknowledged to be full of danger.   Were the door opened still wider for the admission of all the loose *dicta* of the parties, running, it might be, as in this instance, through a long course of years, the flood of evil would become so great as to sweep before it every barrier of confidence and safety, which human forethought, springing from experience, is so sedulous to raise against the treachery of memory and the falsehood of men.   To avoid, therefore, what would really be a social calamity, it is recognised as a settled maxim, that oral evidence of an agreement or understanding between parties to a deed or other written *instrument*, entertained before its execution, shall not be heard to vary or materially affect it : Cozens *v.* Stevenson, 5 *Ser. & R.* 421 ; Gilpin *v.* Consequa, 1 *P. C. C. Rep.* 85 ; S. C. 3 *W.C.C. Rep.* ; McKennan *v.* Henderson, 1 *Pa. Rep.* 417.   Accordingly, the settled rule is that, when a contract has been reduced to writing, it is understood as expressing the final conclusions of the contracting parties, and fully accepted as merging all prior negotiations and understandings, whether agreeing or consistent with it : Lighty *v.* Shorb, 3 *Pa. Rep.* 450 ; Monongahela Nav. Co. *v.* Fenlon, 4 *W. & Ser.* 207–8–9. If any *dicta* or even decision in hostility to this axiom are to be found, they must be ascribed to the strong desire we are all apt to be swayed by, to defeat some strongly suspected fraud in the particular case.   But these occasional aberrations but lead to the

[Rearick's Executors *v.* Rearick.]

more emphatic reannunciation of a principle found to be essential to the maintenance of that certainty in human dealings, without which commerce must degenerate into chicanery, and trade become but another name for trick.　On looking into the opinion delivered when this case was here before, among the cases cited as illustrative of the general rule, and the exceptions to it, I find but one referred to as favoring the receipt of parol testimony, to prevent fraud, by extending the rule beyond other authorities, which confine such testimony to what occurred at the execution of the instrument.　That case is Lyon *v.* The Huntingdon Bank, 14 *Ser. & R.* 283.　But a more critical examination of it proves the remark to be inaccurate, if it was intended to assert what was there adjudged gives countenance to the introduction of stale and bygone communications and conclusions, as capable of governing subsequent contracts.　The verbal agreement there proved was made in reference to the first note given by the defendant, and at the time it was given, with the express understanding that it was to extend to and include subsequent securities on the same account.　It was in fact, as observed by the late chief justice, but one transaction, though made up of a number of consecutive occurrences.　The determination may therefore, be well made to harmonize with the other precedents on the same subject.

As to the subsequent declarations of the testator, it has been already intimated, their competency is altogether dependent on the efficacy of the first conversations, as instruments of proof.　The former are receivable only as corroborative of the latter, and these being excluded, there remains nothing upon which those can be supported.　They are, certainly, not of any force to explain or contradict the deed and will executed by the father; for this would be to defeat both the statute of frauds, and the statute of wills, without any apology for trenching upon them: McWilliams *v.* Martin, 12 *Ser. & R.* 269.　As between the parties to such instruments as have existence here, I know of but one purpose for which subsequent parol declarations can be invoked, and that is to show the existence of a secret trust; except, indeed, it be to prove a fraud practised in the inception of a transaction, subsequently confessed.

I have said the Court of Common Pleas properly admitted the witness Conrad to testify, under the statement made of his proposed evidence.　But after its character was disclosed, and it was thus shown not to bear the impress the offer assigned to it, the learned judge ought to have instructed the jury, in answer to the plaintiffs' first point, altogether to disregard it, because of its insufficiency to explain or alter the written instrument given in evidence.　Indeed, he seems to have been of this opinion; but, from some misapprehension of the decision of this court in the cause, instructed the jury that it was not necessary to a successful

defence to prove any intended modification of the written agreement. In this he was mistaken. The oral evidence being out of the way, nothing remained to show the contract of the parties but the instruments sealed by them. These, standing alone, give to the plaintiff a good cause of action, and such should have been the instruction.

I perceive other errors are assigned on the record; but that which has been considered was the only one discussed on the argument, and is, therefore, the only one now necessary to be decided. Indeed, as the case is presented by this record, it covers the whole ground.

Judgment reversed, and a *venire de novo* awarded.