# Lowry, Appellant, *v.* Roy.

*Contract—Written contract—Prior negotiations.*

1. When a contract has been reduced to writing, it is understood as expressing the final conclusions of the contracting parties, and fully accepted as merging all prior negotiations and understandings, whether agreeing or inconsistent with it.

2. To contradict or vary the terms of a written contract by an oral contemporaneous agreement between the parties, there must be allegation as well as proof, not only of it, but of its omission through fraud, accident or mistake from the writing.

3. The evidence of a contemporaneous parol agreement modifying the terms of a written contract must in order to prevail, be clear, precise and indubitable, must carry a clear conviction of its truth and be sufficient in weight to move the conscience of a chancellor to reform the instrument.

4. In an action by a contractor for laying the water pipe of a water company against a sub-contractor and his surety, a trust company, the trust company set up as a defense that it had been agreed orally between the contractor and the vice president of the trust company that the location of the line had been fixed, and that there would be no departure therefrom. The contract between the contractor and the water company gave to the water company the right to change the location of the line, and this was known to the vice president of the trust company at the time of his conversation with the contractor. Subsequently the vice president caused to be drawn the contract between the sub-contractor and the contractor, and also the bond in suit, but without inserting in it any stipulation that the contract was based upon the line as then actually located. During the progress of the work the line was changed by the water company. *Held,* that the alleged parol agreement was inadmissible as a defense inasmuch as it was not made contemporaneously with the written agreement, and that it should be considered as a prior negotiation which had been merged in and extinguished by the written agreement.

Argued October 7, 1912. Appeal, No. 139, Oct. T., 1912, by plaintiffs, from judgment of C. P. Cambria Co., Dec. T., 1909, No. 499, on verdict for Title Trust and Guarantee Company of Johnstown, in case of Frank Lowry and E. M. Mack, trading and doing business under the firm and co-partnership name of Lowry and

Mack v. Charles Roy and The Title, Trust and Guarantee Company of Johnstown, Pa. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Assumpsit on a bond. Before O'CONNOR, J.

The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows:

"If you find that a contemporaneous parol agreement was entered into, and that relying solely upon that and upon that alone the trust company executed this bond, because of the fact that there was a material change, whether it injured the trust company or not, in the line of this work, then you would find for the plaintiff for the amount of the claim as against Charles Roy. If you do not find from the evidence in this case that it measures up to the standard which the law requires, to make out such a contemporaneous parol agreement as would vary the terms of the written agreement in this case, considering all the evidence, considering all the statements of Mr. Mack, Mr. Rose and Mr. Rhue and all other testimony on that point, then you would find for the plaintiffs in this case in the amount of the claim."

Plaintiffs presented this point:

1. If you find from the evidence that the written agreement of August 12, 1908, executed by Lowry & Mack and Charles Roy, embraced and contained the entire contract between said Lowry and Mack of the one part and Charles Roy of the other part, relative to the water pipe line, then we instruct you that, by the terms of that contract, the engineer of the Windber Water and Power Company was authorized to make changes in the location of the pipe line from that shown on the plans either before or after the construction had begun, and the contractors, namely, Lowry & Mack, and Charles Roy, their sub-contractor, were bound to complete the work accord-

ing to the contract and specifications and according to the direction of said engineer; and the defendants, namely, Charles Roy and the Title, Trust and Guarantee Company, cannot be relieved by reason of changes made in the location of the line by authority of said engineer. *Answer:* We affirm the point and call to your minds at the same time what we have said in regard to the agreement, which, if you find affirmatively in favor of the defendant, would release them. (2)

Verdict and judgment for the defendant, the Title, Trust and Guarantee Company of Johnstown. Plaintiffs appealed.

*Errors assigned,* among others, were (1, 2) above instructions, quoting them.

*H. S. Endsley,* with him *Charles F. Uhl,* for appellants.—The plaintiffs were entitled to binding instructions not only against Roy, but also against the Title, Trust and Guarantee Company, the surety on the bond, and to a direction for judgment against both defendants non obstante veredicto for the following reasons:

(1) The evidence of the parol agreement was clearly insufficient to vary the written contract, as it was far from being clear, precise and indubitable; and furthermore, it was intentionally omitted from the written contract.

(2) The change in the location of the line was made by the engineer in charge by virtue of authority expressly conferred by the written contracts between the parties.

(3) The change in the line did not injure the defendants, as it admittedly only shortened it and did not increase the per foot cost of the work, and therefore did not increase the hazard of the surety: Irvin v. Irvin, 169 Pa. 529; Kennedy v. Plank Road Co., 25 Pa. 224; Thomas v. Loose, 114 Pa. 35; Cozens v. Stevenson, 5 S. & R. 421; Wodock v. Robinson, 148 Pa. 503; Union Stor-

age Co. v. Speck, 194 Pa. 126; Krueger v. Nichola, 205 Pa. 38; Faux v. Fitler, 232 Pa. 33.

*John W. Kephart,* with him *Percy Allen Rose,* for appellees.—Parol evidence is admissible to show a verbal contemporaneous agreement which induced the execution of a written obligation, though it may vary or change the terms of the written contract: Croyle v. Cambria Land & Imp. Co., 233 Pa. 310; Cullmans v. Lindsay, 114 Pa. 166; Sidney School Furniture Co. v. School Dist., 130 Pa. 76; Lippincott v. Whitman, 83 Pa. 244; Fidelity & Casualty Co. v. Harder, 212 Pa. 96.

OPINION BY MR. JUSTICE POTTER, January 6, 1913:

This was an action of assumpsit by Frank Lowry and E. M. Mack, doing business as Lowry & Mack, against Charles Roy, as principal, and the Title, Trust and Guarantee Company of Johnstown, Pa., as surety upon a bond in the sum of $5,000, dated August 12, 1908, given to the plaintiffs to insure the faithful performance of a contract between them and Roy. This was a sub-contract which covered the excavation and refilling of a ditch or trench for the laying of a line of water pipe for the Windber Water and Power Company and it provided that the work should be done in accordance with the articles of agreement between plaintiffs, who were the principal contractors, and the Windber Water and Power Company, "and in the location and of the width and depth as may be directed by the engineer of the said Windber Water and Power Company, and in the manner to be approved by the said engineer." It also provided that the price to be paid for the work was to be thirty-five cents per lineal foot, regardless of the depth or width of the ditch, and to be based on the measurements of the engineer, and that the engineer should "have the option of making changes in the location of the line from that shown upon the plans, either in dimensions or in materials contemplated in this contract, either be-

.fore construction or after it has begun." The provision last quoted is contained in the original contract between the Windber Water and Power Company and plaintiffs, and is made part of the contract between plaintiffs and the defendant Roy. After doing part of the stipulated work, Roy abandoned the contract, and plaintiffs were compelled to complete the work at a cost of $4,098.22 in excess of the contract price, which sum they sought to recover in this suit.

Upon the trial Roy made no defense to the action. The Title, Trust and Guarantee Company, however, defended on the ground that there had been an oral agreement between plaintiffs and a representative of the trust company, before the bond was given, that the trench should be located on a line which was then staked out upon the ground, and that there would be no change of location; but that subsequently the location of the trench was changed without the knowledge or consent of the trust company. It therefore claimed that this change of location was a breach of the oral agreement, and absolved it from its obligation as surety. That the location of the line was changed was admitted, but it was claimed that it was without detriment to the contractor, or the surety.

At the trial a verdict for the full amount of the claim was directed as against the defendant Charles Roy, but as against the trust company the jury were left to determine whether there was such a contemporaneous oral agreement as was alleged by defendant, and whether, if there was such an agreement, it was the inducement to the trust company for the execution of the bond. If they found both of these questions in favor of the trust company, they were instructed to relieve it of liability, and find a verdict against Charles Roy alone. Counsel for plaintiffs submitted a point requesting binding instructions in their favor as against both defendants, to which the judge answered: "We affirm this point, unless the surety is released." And he added further in sub-

stance, that if the jury found there was a contemporaneous parol agreement as alleged by defendants, which was the sole inducement to the execution of the bond, the verdict would be against Roy alone.   The result was a verdict against Roy alone.   Motions for a new trial, and for judgment non obstante veredicto were made by counsel for plaintiffs, but were overruled by the court, and judgment was entered on the verdict.   Plaintiffs have appealed.

The record shows no final judgment either in favor of or against the Title, Trust and Guarantee Company of Johnstown, but at the argument, counsel for both sides agreed that the case should be considered by this court as though a verdict had been taken expressly in favor of the trust company and judgment entered thereon.   It appears from the record that counsel for plaintiffs submitted a request for binding instructions in their favor, which the trial judge affirmed with a qualification which practically amounted to a refusal of the point.   Counsel for plaintiffs were therefore entitled, under the Act of April 22, 1905, P. L. 286, to move for judgment in their favor non obstante veredicto, upon the whole record; and they did so move.   The denial of that motion is part of the final judgment which was here entered.   If, therefore, the plaintiffs were entitled to binding instructions against the trust company, they can maintain their appeal under the provisions of the Act of 1905.

The principal question here raised is whether there was evidence sufficient to be submitted to the jury, of a contemporaneous parol agreement, modifying the terms of the contract between the parties.   Counsel for the appellee concede in their argument that under the authorities, the evidence of such an agreement, in order to prevail, must be clear, precise and indubitable; that it must carry a clear conviction of its truth, and that it must be sufficient in weight to move the conscience of a chancellor to reform the instrument.

The evidence was that Mr. Rose, the vice president of the defendant company, was thoroughly familiar with the provisions of the contract, and that he drew, or supervised the drawing of both the contract and the bond. That before agreeing to become surety on the bond, he called the attention of the plaintiff Mack to the provisions of the contract, giving to the engineer of the Windber Water and Power Company the right to fix, and to change the location and the width and depth of the ditch, which was the subject of the contract; and that Mack assured him that the engineer at that time had determined upon the location of the line and had indicated it by stakes in the ground; and that he further expressed the opinion that so far as the trust company was concerned, it need have no apprehension as to a change, because the location was fixed, and there would be no departure therefrom. The witness testified that he then spoke of investigating the location, and that the plaintiff Mack left him with the understanding that the witness was to communicate with him after making the investigation. The company then sent Mr. Sheesley, a contractor, to examine the location, to ascertain whether it had been actually made by the engineer, and whether it was indicated on the ground in the usual manner, etc. The result of this investigation was reported to witness. He then again went over the question of the location with Mr. Mack, and states that Mack assured him that there would be no variation from it. It appears that Mack's statements were true in so far as anything had at that time occurred. The line had been located and staked out, and was then apparently established. Any statement that Mack may have made, that no change in the location was to be expected, was apparently made in good faith. He did nothing afterwards in violation of his statement, but the engineer of the water company made a change in the location in accordance with the authority plainly conferred upon him in the contract. At the time of the conversation the representative of the

defendant company knew of the clause in the contract between Lowry and Mack and the water company, which gave to the engineer of the water company the right to change the location of the line. It was not within the power of Mack to stipulate that the engineer would not exercise this privilege, and this the representative of the trust company well knew. But Mack could have been required to stipulate in the contract with Roy that it was based upon the line of the ditch as then actually located. It was after this time that the witness caused to be drawn the contract between Roy and these plaintiffs, and the bond which is the subject of this litigation; the former being but slightly changed in form from a contract which he had previously drawn. The principal change consisting in the addition of a provision that moneys earned by the contractor in excess of the monthly pay roll should be paid to the trust company for its protection. It is evident, therefore, that the representative of the trust company had ample opportunity to incorporate in the written contract, the inducing promise of the alleged parol agreement, if there had been a serious intention that it should form a part of the contract. It does not appear, therefore, that the alleged parol agreement between Mr. Mack and Mr. Rose, that the location of the ditch would not be changed, was contemporaneous with the execution of the bond. When it was alleged to have been made, neither the contract nor the bond had been prepared. It was after the plaintiff Mack had left his office that Mr. Rose, acting as he says for the trust company, had both the bond and the contract re-drafted. The clause in the first contract to which he had objected, which gave to the engineer power to fix the location and the dimensions of the trench, was reinserted in the new contract, and the bond was executed upon the part of the trust company, and the papers were sent to Mr. Mack, without calling his attention to the fact that the trust company would not consider itself bound by the clause which its repre-

sentative had himself knowingly permitted to be incorporated in the contract. We cannot regard this evidence of the oral agreement as sufficient to move the conscience of a chancellor to reform the instrument. Why should the court be asked to do that which the representative of the trust company did not do, when he had ample opportunity, that is, write into the last contract a clause making it applicable only to the line as then located? In view of the defendant's own evidence, how can it fairly be contended that the trust company executed and delivered the bond solely on the faith of the oral understanding? If that was the case, why was not the written contract altered, to make it express the fact? When the plaintiffs received from Mr. Rose the contract and bond executed by the trust company, we think they were justified in assuming that the trust company was satisfied with the contract as written, no matter what may have been said in the preliminary conversations, prior to its actual drafting. The last draft contained at least one material alteration, made for the benefit of the trust company, and if any others were intended they could readily have been made. We can only regard the conversations between Mr. Mack and Mr. Rose, before the drafting of the contract, as prior negotiations, not expressing the final conclusion between the parties, and as they deliberately put their engagement into writing, these prior negotiations must be considered as having been merged in, and extinguished by, the written instrument, which was the final result of the bargaining. As long ago as Rearick v. Rearick, 15 Pa. 66, this court, speaking by Mr. Justice BELL, said (p. 72) : "It is recognized as a settled maxim that oral evidence of an agreement or understanding between parties to a deed or other written instrument, entertained before its execution, shall not be heard to vary or materially affect it. Accordingly the settled rule is, that when a contract has been reduced to writing, it is understood as expressing the final conclusions

of the contracting parties, and fully accepted as merging all prior negotiations and understandings, whether agreeing or inconsistent with it." In Yaryan v. Glue Co., 180 Pa. 480, Mr. Justice McCollum said (p. 497) that the general rule is that "Prior conversations between the parties are not admissible to vary the terms of a written contract." And in Vito v. Birkel, 209 Pa. 206, it is said, per curiam, that the general rule is that "All preliminary negotiations are merged and terminated by the execution of the written contract."

In the case at bar there was neither allegation nor proof that the bond was executed through fraud, or that through accident or mistake the oral agreement was left out of the contract, when it was re-drafted. In Krueger v. Nicola, 205 Pa. 38, our Brother Brown said (p. 42) : "To contradict or vary the terms of a written contract by an oral, contemporaneous agreement between the parties, there must be allegation as well as proof, not only of it, but of its omission through fraud, accident or mistake from the writing. This has been ruled so frequently that reference is hardly needed to one or two of the many authorities on the subject." He then cites the decisions in Wodock v. Robinson, 148 Pa. 503, and Hunter v. McHose, 100 Pa. 38.

We sustain the second, fifth and sixth assignments of error. The judgment entered upon the verdict at the trial is set aside; and we now, after reviewing the action of the court below, enter judgment non obstante veredicto upon the whole record against Charles Roy and the Title, Trust and Guarantee Company of Johnstown, Pa., defendants, for the sum of $4,656.27 with interest from September 8, 1911, being such judgment as we deem to be warranted by the evidence taken in the court below.