## Steininger v. Spaid et al.

*William H. Hackenburg* and *Fred V. Follmer*, for plaintiff.

*A. F. Gilbert* and *Jay G. Weiser*, for defendants.

POTTER, P. J., Aug. 26, 1929.—This is an action of ejectment brought by the plaintiff against the defendants for the recovery of the possession of a dwelling-house and lot of land, situate in the Borough of Middleburg, which is the county seat of Snyder County. The trial of the suit before a jury resulted in the rendition of a verdict for the plaintiff, and the defendants have filed reasons for a new trial.

This plaintiff and his wife are well advanced in years, have no children, being in the early seventies in age, and are the subjects of the infirmities incident to their age in life. George Spaid is the husband of Mrs. George Spaid, younger in years than the plaintiff, and the other two defendants are their son and daughter. Approximately in the year 1922, the defendants, by some kind of verbal agreement with the plaintiff, moved into the home in dispute with the plaintiff and his wife and continued to reside with them up to Jan. 21, 1926, when the agreement, marked as defendants' Exhibit No. 1, was

executed, and since that time up to this date. In this agreement it is stipulated, among other things, that the defendants are to live with the plaintiffs, care for them kindly, and at the death of J. M. Steininger, the plaintiff, the home is to be theirs, but no provision is made for the wife of J. M. Steininger should she survive her husband. Several minor provisions are also made as to the providing of fuel, food, &c., by the respective parties to the agreement. Not long after the execution of this agreement, the plaintiff and his wife left their home and left the defendants in possession, and since that time have been living with friends and relatives. The defendants remained in possession and are now so. The plaintiff contends that the defendants have violated the terms and provisions of this agreement, and have treated him and his wife so unjustly and unkindly that they were obliged to abandon their home, and he has brought this suit to oust them and again recover the sole possession of his home, and, as we have said, the trial resulted in a verdict in his favor.

The defendants deny any unjust or unkind treatment by them of the plaintiff and his wife. Witnesses have testified both *pro* and *con* on this question, wherefore it became a question of fact to be passed upon by a jury. George Spaid is a brother of Mrs. J. M. Steininger. A note for $6000 payable at the death of the plaintiff, without interest, was also executed and delivered by him to George Spaid when the agreement was executed, which was immediately entered as a lien against the plaintiff's real estate. The plaintiff was bail on two notes of George Spaid in the sum of approximately $3200. Spaid and his family, prior to 1922, had resided in Beavertown, Snyder County, about eight miles west of Middleburg, where he owned a dwelling, a mill and a tract of land, being timber land, which he values at, respectively, $5000, $4500 and $1000. He had debts of approximately $6090.

At the trial it was proposed by the defendant to produce testimony as to the oral agreement under which the Spaids moved into the home of the plaintiff in the year 1922. This was objected to by the plaintiff, and we sustained the objection, thereby barring the admission of this proposed oral testimony. Our ruling on this question constitutes one of the principal, if not the principal, reason or reasons for the new trial.

In the case of Wodock *v.* Robinson, 148 Pa. 503, it is said: "It is a rule too firmly rooted in justice and honesty to be easily eradicated from any system of wise laws, that all negotiations, all conversations, all oral promises, all verbal agreements are forever merged in, superseded and extinguished by the sealed instrument which is the final outcome and result of the bargaining of the parties. And, unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms can neither be added to nor subtracted from by parol evidence." We had this legal principle in mind when we refused to receive the offered testimony, and in no part of the proceedings have the defendants alleged fraud, accident or mistake. This same principle of law is again reiterated in the case of Wright *v.* General Carbonic Co., 271 Pa. 332, page 335, where it is stated that "all negotiations between the parties are merged in the agreement subsequently entered into. This proposition is undoubtedly correct unless fraud, accident or mistake be alleged." In the case of Eberle et al. *v.* Bonafon's Exec'r et al., 17 W. N. C. 335, even "evidence of a contemporaneous parol agreement which does not tend to establish fraud, mistake or trust is not admissible to change the effect of a written contract." Were the door opened for the admission of all the loose *dicta* of the parties, running, it might be, through a long course of years, the flood of evil would become so great as to sweep before it every barrier of confidence and safety which human forethought, springing from

experience, is so sedulous to raise against the treachery of memory and the falsehoods of men. To avoid, therefore, what would be a social calamity, it is settled and recognized as a maxim that oral evidence of an agreement or understanding between the parties to a deed or other written instrument, entertained before its execution, shall not be heard to vary or materially affect it: Cozens *v.* Stevenson, 5 S. & R. 421; Rearick's Exec'rs *v.* Rearick, 15 Pa. 66. We might cite many more cases sustaining this principle, such as Lowry *v.* Roy, 238 Pa. 9; Gianni *v.* Russell Co., 281 Pa. 320, as well as others, but we deem it not necessary. Thus fortified by the appellate courts, we do not think we committed error in excluding the testimony offered in this behalf.

And now we come to the question raised in defendants' first point, viz., that ejectment will not lie in this case. It will be noted that no deed passed for the property. It was to be passed after the death of the plaintiff. Therefore, so far as relates to the property in dispute, no consideration passed by the agreement. It was held in abeyance till after the death of the plaintiff. Spaid took no title to the home. It still remained in the plaintiff. A promise of conveyance was made which might never bear fruit. A marked distinction is to be drawn between this case and those cited by the defendants in their brief. In all of them a deed had passed. The consideration for future care and support had been paid. The legal title was in the grantees, while in the case at bar it remained in the person whose property was to be granted after his death. As long as he lived he had full dominion over it. If the Spaids faithfully performed their part of the contract till the death of the plaintiff, the property was then to be theirs, not otherwise. Would this not be an estate on condition which could be defeated by non-performance of the covenants in the agreement by the expectant grantees? And if they failed to perform these covenants, still occupying the premises, could not the legal owner oust them by ejectment? We think he could. If he could not, who could? Surely not a stranger. Let us suppose, for the sake of the argument, the Spaids did not do their duty in accordance with the terms of the agreement. Let us suppose they did not treat the plaintiff and his wife as they should. Let us suppose the plaintiff and his wife were compelled, by bad treatment, to withdraw from their home and leave the Spaids in possession. If in that event Steininger could not institute proceedings of ouster, then he and his wife would be wanderers upon the face of the earth in their old age, and others would enjoy the fruits of their labors in earlier life. This would not be justice or equity from any viewpoint. Looking at the matter from every angle, we think ejectment will lie in this case. We are not herein saying the Spaids are at fault, but the jury have said so by their verdict. As they have decided this question of fact after hearing the testimony both ways, it must stand, so far as concerns us. We have no authority to set aside their solemn verdict.

We have examined the other reasons assigned, and, from our viewpoint, they cover questions of fact on which the jury have passed. They need no discussion. We have now, at some length, discussed the two vital reasons assigned. We cannot view them from the defendants' standpoint, hence we enter the following order or decree:

And now, to wit, Aug. 26, 1929, the new trial is refused and the reasons assigned therefor are dismissed. And we direct that judgment be entered upon the verdict of the jury upon compliance with the usual legal requirements. To which ruling by us an exception is noted for the defendants and a bill is sealed.

From A. Francis Gilbert, Middleburg, Pa.