## Iacovino, Appellant, *v.* Caterino et al.

Argued September 26, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Fred B. Trescher,* of *Kunkle, Walthour & Trescher,* for appellant.

*C. Ward Eicher,* with him *Alex Eicher,* of *Eicher & Eicher,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, December 5, 1938:

The parties hereto are the children and heirs of Michael and Emilia Caterino, who died intestate within two months of each other. The children entered into an agreement for a family settlement of their property which was reduced to writing, fixing the share of each child at $3,500. One of the daughters, Mary Colangel, was indebted to the estate in the amount of $4,200. Christine's, the appellant's, share was to be taken from this indebtedness after deducting a debt alleged to be owed by her to Mary. The settlement agreement so provided.[1] The difference between this debt and her share

---

[1] "Note owed by Mary Colangel to estate of $4,200. Share of Christina Iacovino is to be taken from that note, paying off debt owed to Mary Colangel and balance to pay off on mortgage on home of Christina Iacovino, thus she received $3,500 of her share."

was to be applied by Mary to the reduction of mortgages on Christine's home. Mary was then to pay the balance of her own debt to the estate and take one of the properties for her share. The agreement did not specify the amount of Christine's debt to Mary. It did not recite that title to Christine's home was then in Mary and her husband, or that the mortgages of record were their debts. After signing the agreement the heirs met to fix the amount of the debt owed Mary, which it is contended was $2,430.32. Mary paid off an encumbrance of $900 on appellant's home and conveyed it to her, leaving the first mortgage of $2,000 and a balance due Christine. The home was sold on foreclosure of this mortgage two years later.

Christine instituted this action to recover $3,500 with interest, claiming she owed Mary nothing and, as her share of the estate would have more than paid off any mortgages on her home, she was to have received her home free and clear of encumbrances. The jury returned a verdict for her in the sum of $4,333. The court below set aside the verdict and entered judgment n. o. v., holding that she was bound by the terms of the written instrument.

Family settlements to promote peace and harmony are regarded with favor in the law,[2] and will be enforced strictly against the parties thereto.[3] This settlement represented the integration by reduction to writing of parol agreements among the heirs concerning this distribution of assets. It superseded all prior and contemporaneous parol agreements upon the same subject

---

[2] *Braunschweiger's Estate,* 322 Pa. 394, 397; *Walworth v. Abel,* 52 Pa. 370, 373; *Brenneman's Estate,* 17 Pa. Superior Ct. 75; *Appeal of Wilen et al.,* 105 Pa. 121, 124; *Burkholder's Appeal,* 105 Pa. 31, 36.

[3] *Barton v. Wells,* 5 Whart. 225; *Walworth v. Abel,* loc. cit. supra, note 2. In the latter case it was said: "Family arrangements are favorites of the law, and when fairly made are never allowed to be disturbed by the parties, or any other for them."

matter. In *Rearick's Exrs. v. Rearick*, 15 Pa. 66, at p. 72, it was said: "Accordingly, the settled rule is that, when a contract has been reduced to writing, it is understood as expressing the final conclusions of the contracting parties, and fully accepted as merging all prior negotiations and understandings, whether agreeing or [in]consistent with it." See also *Lowry v. Roy,* 238 Pa. 9, 17; *Gianni v. R. Russell & Co., Inc.,* 281 Pa. 320.

Though this settlement did not dispose of all the property of the estate, it did control the disposition of the property therein set forth, reserving, for the future, distribution of the remaining assets. Appellees therefore contend that parol evidence should not have been admitted to show that appellant owed Mary nothing, since it contradicts her admission in the written instrument.

The Parol Evidence Rule has no application, however, to the oral testimony admitted to show the debt owed by appellant to Mary and the transactions between them. Appellees had, by the very nature of the family settlement, obligated themselves jointly to see that it was carried out as to Christine's share, and she contends this has not been done. The question cannot be determined from the agreement itself, without this additional explanatory testimony. Paragraph three does not set forth the amount owed by Christine; it is necessary that this be established by oral evidence. It could be proved in no other way. The mortgages on the home were in the name of Mary and her husband as mortgagors, and title to the property was in their names; it was necessary that these circumstances be explained in the same way. As the family settlement was silent on these points, parol evidence of the sum owed by Mary, if any, was not in contradiction of the writing but explanatory and in aid of it. Such testimony is always admissible: *Appeal of Real Estate, Title, etc., Co.,* 125 Pa. 549; *Lomasney v. Turner,* 33 Pa. Superior Ct. 106.

The proof of this debt raised an issue of fact for the jury. The court properly admitted oral evidence to show the transactions between Mary and appellant upon which the debt was predicated. Appellant testified that she had been indebted only to Mary's husband, upon a note which had been satisfied long prior to the signing of the settlement agreement. She and her husband were competent witnesses for this purpose and their credibility was for the jury, as was the credibility of appellees and the other witnesses; even if appellant's testimony had been excluded, and the testimony of appellees and their witnesses had been uncontradicted, the court could not have granted binding instructions for them: *Nanty-Glo Boro. v. American Surety Co.*, 309 Pa. 236; *Second Natl. Bk. v. Hoffman*, 229 Pa. 429. The jury was entitled to disbelieve them and to find that the debt had not been proved, independent of appellant's testimony. Despite the fact that the charge was more favorable to appellees than to appellant, the jury returned a verdict for appellant, thereby resolving the issue of fact in her favor. It was error for the court to set aside this verdict and grant judgment n. o. v. merely because it was of the opinion that appellant's story was not true. See *Hostetler v. Knisely*, 322 Pa. 248, 249; *Dalmas v. Kemble*, 215 Pa. 410; *Reel v. Elder*, 62 Pa. 308. The court below found that portions of appellant's testimony were "wholly unbelievable" and "evident fabrication." Her credibility was for the jury, and if the court felt that her testimony was of that character, a new trial should have been promptly granted. Under the rule of the *Nanty-Glo* case, the jury must pass on the credibility of witnesses.

Judgment reversed, and the court below is directed to dispose of the motion for a new trial.