## Hammer Estate

*Coffroth & Boose* and *Marlen B. Stephens*, for petitioners.

*W. Curtis Truxal* and *Frank A. Orban, Jr.*, for respondents.

LANSBERRY, P. J., August 1, 1956.—In this orphans' court proceeding petitioners, Howard Trexel and Forrest Queer, grandson and son-in-law respectively of decedent, John C. Hammer, seek an order of this court requiring Frank Glessner and Solomon R. Hammer, respondents and surviving coexecutors of the estate, to file an inventory and accounting. One of respondents, Solomon R. Hammer, resists the petition on the basis of an alleged family settlement by which the whole estate was fully and completely settled many years ago, save for the manual delivery of certain securities. The other respondent stated his willingness to

file an accounting insofar as he could. The decisive issue is whether or not a family settlement agreement was in fact entered into.

John C. Hammer died testate March 29, 1913, survived by his widow, Malinda M. Hammer, and their five children, all adults, as follows: Martha Hammer Glessner, Solomon R. Hammer, Emma Hammer Queer, Alice Hammer Trexel, Winfield Scott Hammer and John Jacob Hammer. By his last will and testament, dated January 13, 1913, John C. Hammer, inter alia, devised his farm, the homestead, to his two sons, Scott and Jacob, subject to a life estate in the widow and upon condition that the sons be charged $8,000 for the same together with the equipment and livestock thereon, this amount to be reckoned as part of the personal estate. Solomon R. Hammer, a son, Franklin Glessner, a son-in-law, and Bertha Hammer Trexel, a daughter, were named executors of the will and as such caused the will to be probated and qualified as executors. Although no inventory or appraisement was filed, the testimony discloses that the farm, at least 32 bonds of the Kennerly Coal Company of the face amount of $500 each, other mortgages, notes and perhaps some cash constituted the assets of the estate.

Pursuant to the devise of the farm, Scott and Jacob took possession of the home farm.

On April 17, 1916, the widow and children, together with their respective spouses, entered into a family agreement with Solomon Hammer whereby eight of the bonds were delivered to him by the executors as his full share and portion of the estate upon condition that Solomon would secure the estate in event the same was necessary to carry out the will of decedent. From the proceeds of the sale of these bonds Solomon Hammer purchased a farm and gave to the executors a mortgage in the face amount of $4,000 on that farm.

Jacob Hammer having died in November 1918,

single and without issue, his one half interest in the farm descended to his mother, who upon condition that Scott Hammer would pay each of the other children $800, being the $4,000 charged against Jacob by his father's will and now divisible by five, the number of children surviving, conveyed this undivided one half interest to Scott Hammer. Two of the children, Martha Hammer Glessner and Alice Hammer Trexel, were paid $800 each, Emma Hammer Queer was paid $200 and Solomon Hammer has been paid nothing on this account.

Petitioner, Howard Trexel, was born August 29, 1918, and his mother, Alice Hammer Trexel, died December 26, 1922. Malinda Hammer, widow of John C. Hammer, died in 1923. Emma Hammer Queer died June 13, 1951, survived by her husband, Forrest Queer, the other petitioner here.

It is the contention of petitioners that these respondents, Frank Glessner and Solomon R. Hammer, being the surviving coexecutors, bear a fiduciary relationship and have a statutory duty to account, not only to petitioners, but likewise to all the persons interested in the estate for the $4,000 charged against Scott Hammer by the will, the $600 due Emma Hammer Queer estate, the $800 due Solomon Hammer, the latter two items being the unpaid charge against Jacob by the will, the admittedly remaining 23 Kennerly Coal Company bonds and such other assets as are part of the estate of John C. Hammer.

To this contention respondents assert that by a family settlement agreement, partially in writing and partially oral, entered into and consummated by all of the children and widow of John C. Hammer, all assets of the estate have been fully accounted for many years ago and nothing further remains to be done save the delivery of the Kennerly Coal bonds in accordance with the family settlement agreement.

Petitioners readily concede the long established principle of our law that "family agreements or settlements are always favored in the law and when fair are valid and will be upheld whenever possible" and further, "family agreements construing wills are, in absence of fraud, binding": Fry v. Stetson, 370 Pa. 132. These agreements must be clearly established and the burden thereof is upon him asserting the family settlement: Braunschweiger's Estate, 322 Pa. 394. Petitioners readily concede further the written family agreement of April 17, 1916, and its authenticity and so interpret it as supporting the distribution scheme contained in decedent's will. Petitioners, however, challenge the alleged oral portion of the family settlement whereby the whole estate was settled and respondents relieved from an accounting.

Upon a careful review and consideration of the entire record and the law applicable thereto, we are of the opinion and find as a fact from an abundance of evidence that all the parties in interest in this estate entered into a family settlement agreement which agreement has been in effect for a long period of time and which family agreement dispenses with the necessity of a further formal accounting by the surviving coexecutors. Our reasons for this finding and conclusion will become apparent in the following resumé and discussion.

1. The positive, uncontradicted testimony of the participants to the agreement establishes the fact of the family settlement agreement.

Martha Hammer Glessner, aged 74, daughter of decedent and wife of Franklin Glessner, one of the surviving coexecutors, was asked, "Did you take part in a family agreement in connection with this estate?", to which she replied, "I did". She then testified in substance that the agreement was entered into shortly after her father's death, that the meeting took place in

the homstead property with the surviving widow and all six children present, that all present consented that Scott and Jacob should have the home farm, that Solomon should have $4,000 in bonds at that time, that "the girls" were to have the rest of the bonds, that their mother was to have the interest from the bonds during her lifetime and further that all present understood when their mother died the bonds would then be theirs.

Solomon Hammer, aged 73, testified that there was an agreement reached sometime during 1916 that the mortgage given by him on the farm he purchased with the proceeds of the bonds turned over to him was for the sole purpose of securing to his mother the interest which she would otherwise have received from the bonds during her lifetime. Mr. Hammer was specifically asked if the executed written agreement was the family agreement and replied, "that is one not all the family agreement", and in further explanation thereof detailed the understanding had at his mother's home with all present as testified by Mrs. Glessner.

Scott Hammer, aged 68 years, testified in substance similar to that of his sister and brother and he too stated the written agreement was only a part of the family settlement.

Of the seven parties to the family agreement entered into more than 35 years prior to this proceeding, only three of them yet remain; they are all aged; they are, in a sense testifying against their pecuniary interests, and they are unanimous in the substance of their testimony that there was a family agreement, partially in writing and partially oral, and that all parties so understood the agreement. This testimony was not received in violation of the parol evidence rule (Iacovino v. Caterino, 332 Pa. 556); the testimony stands uncontradicted and compels the only conclusion that there was between the mother and children of this de-

cedent a family settlement agreement in which all parties in interest participated. To reach any other conclusion would require the court to arbitrarily disregard the only testimony on the point in this whole record: Palethorp's Estate, 168 Pa. 98.

2. The circumstances disclosed by this record apart from the direct testimony raise the presumption of a family settlement. Although respondents need not rely on this presumption, it is to be observed that petitioners are confronted with the presumption of a family settlement which they would have been obliged to overcome. The cases hold: "A family settlement may be presumed on the failure to account, acquiesced in over a long period of time": Cannon's Estate, 330 Pa. 513; Plummer Estate, 349 Pa. 453.

In this connection it will be observed that John C. Hammer died in 1913, that his will was promptly probated and the named executors qualified to the duties of their stewardship, that no inventory was filed, that no claims were formally presented by any creditors, that all parties in interest met at the homestead, probably on several occasions, that the account book contained many but not all the transactions in the settlement of the estate, that during the lifetime of all the children no complaints were made nor actions had by either of them or the widow, that Jacob's estate was amicably settled between all parties concerned and consistent with the scheme in his father's will, that subsequent to the death of Alice Hammer Trexel no questions were raised even by the guardian of her minor son, one of the present petitioners, during the 13 years of that guardianship, and not until 1952, a period of more than 38 years after the death of John C. Hammer, was the matter of an accounting seriously presented. Without the positive testimony here, we think these petitioners would be precluded from having an accounting because of the failure to overcome

the presumption against compelling an accounting: Henry's Estate, 198 Pa. 382.

3. The subsequent conduct of the parties in interest confirms the family settlement entered into and relieves the coexecutors from any further accounting. All parties in interest acted in accordance with the family settlement. The widow received the interest from the Coal Company bonds and the mortgage during her lifetime and thereafter the interest derived from the bonds was paid to the girls and the interest from the mortgage ceased; the other mortgages and notes were collected insofar as apparently possible and distributed to those entitled; the specific bequests were made and in so doing an equalization approached among the children in accordance with the general scheme of distribution provided in the will; Scott and Jacob took possession of the farm and until Jacob's death operated it as their own and thereafter for many years Scott uninterruptedly operated it as his own; admittedly the portion of the family settlement as modified as to Solomon was carried out as determined and the total conduct of all parties in interest has been in accordance with rather than in violation of the family settlement as testified to by the three surviving parties to that agreement.

Although counsel for petitioners presented several arguments in support of the position advanced, we are satisfied the decisive issue here is the established fact of the family settlement and that the other matters presented are resolved therein. Accordingly we shall decline the petition for an inventory and accounting in the following

### Order

Now, August 1, 1956, the petition for an inventory and accounting is dismissed at the record costs of petitioners.

254

Same day counsel for petitioners excepts to the foregoing ruling, and at their request an exception is noted and bill sealed.