JOHN S. AMES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8895.   Promulgated January 16, 1928.

*Burton E. Eames, Esq.*, for the petitioner.
*John W. Fisher, Esq.*, for the respondent.

1338

**OPINION.**

PHILLIPS: In computing the distributive share of the petitioner in the net income of the trust estate of which he was the life beneficiary, the Commissioner refused to allow as a deduction any part of the expenditures made by the trustees during the years 1919 and 1920, on the ground that the amounts involved were chargeable to the principal of the trust fund and were not deductible from income. The question before us is not that of determining whether the payments in question are deductible in computing the net income of the trust, but rather that of determining whether the distributive share of the petitioner in the income of the trust is to be reduced by such payments. In determining whether such amounts were to be charged to the principal of the trust fund, or were to be deducted from the income of the life beneficiary, we must look to the decisions of the courts of the State in which the trust is created. Under decisions of the courts of Massachusetts all current expenses such as taxes, insurance, mortgage interest and repairs are properly chargeable against the income of real property and are to be deducted from such income before any payment is made to the life beneficiary. On the other hand, additions of a permanent character are to be paid for from the principal of the trust fund. The trustees are vested with considerable discretion in determining in which of these classes expenditures fall. *Bridge* v. *Bridge*, 146 Mass. 373; *Little* v. *Little*, 161 Mass. 188; *Jordan* v. *Jordan*, 192 Mass. 337. . In the latter case the court held that improvements which did not permanently increase the value of the inheritance but did enhance the income were properly treated by the trustees as chargeable against income of the trust.

In the case before us it appears that the trustees expended certain amounts as commission for securing a lease for a term of five years and in altering the premises to meet the needs of the new tenant. The portion of the property involved had formerly been used by a florist. It was now to be used as a restaurant and lunchroom. It was necessary to change the location of the entrance to the property, to install new types of electric fixtures and to change the locations of such fixtures, to rearrange the radiators and to make over the heating system in the building, to erect partition walls and replace the floors, to tear out much of the woodwork and replace it with new woodwork which would harmonize with the new fixtures installed by the tenant and, after this work was done, to repaint the entire store. All of this work was done for the purpose of adapting the store and basement for the new use to which it was to be put. It did not increase the life of the property and there was no assurance that it would be of any value after the lease expired. A new tenant coming in at the end of the lease might require much the same thing done to fit the premises for a different use. Such expenditures can not be classed as ordinary and necessary repairs nor can they be classed as additions to the property. They fall between the two and in our opinion are properly chargeable against income over the period of the lease under which they are made. It would not be proper from the standpoint either of income tax or from the standpoint of estate accounting to charge such alterations entirely against the principal account nor would it be proper to charge them against the income in the year in which the alterations are made, for if the life tenant dies before the expiration of the lease the remainderman secures the advantage of the expenditure for such alterations. The same is true of the commission paid for securing the lease, which ran for a period of five years from July 1, 1919. In recomputing the distributive share of the petitioner in the income of the trust for 1920, one-fifth of such expenditures made in 1919 from the trust of which he is beneficiary and two-ninths of the expenditures so made in 1920 should be deducted.

In addition to the expenditures for alterations to fit the premises to the use of the tenant, certain repairs were made to the building, including the portion which was subject to the new lease. The walls were repaired; broken plaster was cut out and replaced; worn hardware was replaced by new; the roof gutters and conductors used to drain the water from the roof were repaired and in some instances replaced, leaking skylights were repaired; and broken glass replaced. Repairs were made upon the cornice of the building and expenditures made for other similar items in the nature of

repairs necessary to preserve the building and keep it in efficient operating condition, all at a cost of $1,667 in 1920, of which one-half was properly chargeable against the income of the life tenant. Under the decisions of the courts of Massachusetts such repairs are charged against income and serve to reduce the amount which is paid to the life beneficiary. In recomputing the distributive share of the petitioner in the income from the trust this one-half should be allowed as a deduction from the 1920 income.

The Commissioner having determined no deficiency for 1919 but an overassessment, which it is admitted would result in a refund (if not barred by limitation), the Board is without jurisdiction and the proceeding, so far as it relates to 1919, will be dismissed for want of jurisdiction. *R. P. Hazzard Co.*, 4 B. T. A. 150; *Cornelius Cotton Mills*, 4 B. T. A. 255.

> *The deficiency will be recomputed on 20 days' notice, under Rule 50.*