ANNA M. CHAMBERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THALIA C. TAYLOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17686, 17799, 26057. Promulgated October 9, 1929.

*James H. Courtney, Esq.*, for the petitioners.
*W. F. Gibbs, Esq.*, for the respondent.

OPINION.

PHILLIPS: The respondent determined deficiencies in income tax as follows:

| Taxpayer | Year | Deficiency |
|---|---|---|
| Anna M. Chambers | 1921 | $199.99 |
| | 1922 | 34.50 |
| | 1923 | 45.36 |
| Thalia C. Taylor | 1921 | 56.67 |

The petitioners thereupon duly instituted these proceedings which, at the time of hearing, were consolidated and submitted upon the pleadings and stipulations. It is sufficient to set out here the principal facts without reciting the details contained in the record.

Fred N. Chambers died testate in May, 1918, and by his last will and testament, admitted to probate in Pennsylvania, provided for the distribution of his residuary estate as follows:

THIRD. And all the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and wheresoever situated of which I may die seized or possessed, I give, devise and bequeath unto my said wife, Anna M. Chambers, and William J. Gealy, and the survivors of them, to have and to hold jointly, IN TRUST, nevertheless for the following uses and purposes, and not otherwise to-wit:

a.—To manage and control the said estate, sell and dispose of any part or all of my personal and mixed property lease, sell and dispose of all or any part of my real estate, upon such terms and conditions and for such price or prices as to the said Trustees, or the survivor of them shall seem proper and to make, execute and deliver good· and sufficient leases, deeds and conveyances for said real estate or any part thereof, and to receipt for the rentals and considerations thereof; to borrow money when said trustees may deem it necessary in the proper management of said estate, and to pledge said personal property and mortgage said real estate and mixed property to secure the same; to operate said real estate and leaseholds for oil, gas or other purposes; to receive all moneys due said estate from any source and to invest the same and to change investments and make new investments and in general to do all other things in the premises which said trustees or the survivor of them, shall deem for the best interests of the estate, and all said property to have and to hold for the following uses and purposes and not otherwise;

b.—To keep said estate together and intact as to principal except as hereinafter provided, and the income thereof to divide into two equal portions; one-half of said income, or so much thereof as may be necessary is to be used by said trustees for the support and education of my daughter Thalia Lee Chambers, until she shall arrive at full age, and after she shall be of full age, said trustees shall pay over to her, the said Thalia Lee Chambers, during her natural life so much of the income from said one-half of my said residuary estate, as in the discretion of said trustees may be proper and necessary for her proper use and maintenance in a suitable manner; said estate and income, however, not to be liable in any way for the debts, contracts and liabilities of my said daughter Thalia Lee Chambers, or any husband she may have; provided, however, that said trustees, should they deem said income not sufficient for the proper education or maintenances of my said daughter, may use so much as may be necessary of the principal for said purposes; and further, said trustees, after my said daughter shall be of full age may allow her such control over said estate or any part thereof as in their judgment may be to her best interests and may after she becomes of full age, assign or pay over to her, absolutely a part or all of the principal

of her share of said estate; any income from said half of said estate, not used for my said daughter nor paid over to her, shall be kept separated and invested for her benefit and shall not go in any way to increase the remaining one-half of said estate; at the death of my said daughter all of said one-half of said residuary estate and accumulated income not distributed shall be paid to the lawful issue of said Thalia Lee Chambers, if she leave any to survive her, and if she leave no lawful issue then it shall be paid to my said wife, Anna M. Chambers.

c.—The income from the remaining one-half of said residuary estate is to be paid by said trustees at least semi-annually, to my said wife, Anna M. Chambers, during her natural life, and at her death the undistributed principal from which said income is derived, is to be paid as she may by her will direct, and if she leave no will to the persons who under the intestate laws of the State of Pennsylvania would be entitled to her estate, and in the same proportion as they would take under said intestate laws; neither said principal however nor income shall be liable to attachment in the hands of said trustees for any debts, contracts or liabilities of my said wife, Anna M. Chambers; after my daughter becomes of full age, however, and should at any time thereafter said trustees, or the survivor of them, determine to pay over and distribute to my said daughter any share of the principal of my said estate as hereinbefore provided, then they shall at the same time likewise pay and distribute to my said wife a like part of her share of my estate, so that the principal of said estate in the hands of said trustees, or the survivor, shall always be held by them, one-half for my said daughter and one-half for my said wife, and no distribution of said principal shall be made to one of the two, without the making of a like distribution to the other.

The petitioner, Thalia C. Taylor, is the daughter of said decedent, referred to in his will as Thalia Lee Chambers.

The income of the estate for each of the years involved was computed as follows:

| | 1921 | 1922 | 1923 |
|---|---|---|---|
| INCOME | | | |
| Profit from operation of oil and gas properties | $13,715.69 | $6,743.55 | $254.78 |
| Less depreciation and depletion | 7,485.39 | 7,306.47 | 7,383.40 |
| | 6,230.30 | −562.92 | −7,128.62 |
| Operation of buildings | −6,206.40 | −3,283.00 | 122.96 |
| Depreciation | 2,214.00 | 2,402.68 | 2,332.59 |
| Loss from operation of buildings | −8,420.40 | −5,685.68 | −2,209.63 |
| Dividends | 29,504.17 | 26,982.76 | 32,081.83 |
| Interest | 808.93 | 32.37 | 454.47 |
| Profit from sale of stocks and bonds | | 3,165.81 | |
| Other income | | | 391.82 |
| | 27,623.00 | 23,932.34 | 24,489.87 |
| DEDUCTIONS | | | |
| Loss on sale of stock | 2,314.41 | | |
| Interest paid | 14,531.76 | 14,952.98 | 14,559.74 |
| Taxes paid | 1,351.96 | 1,134.87 | 1,256.33 |
| Loss by fire | | | 676.66 |
| Contributions | 200.00 | | |
| Trustees commissions | 3,438.74 | 3,487.77 | 3,507.20 |
| Total deductions | 21,836.87 | 19,575.62 | 10,999.93 |
| Net income | 5,786.13 | 4,356.72 | 4,489.94 |

Out of the amounts charged off as depreciation and depletion, the trustees reinvested for the estate, in buildings, gasoline plant, equipment and other investments, amounts as follows:

| Year | Amount |
|---|---|
| 1921 | $6, 327. 12 |
| 1922 | 5, 266. 85 |
| 1923 | 16, 454. 44 |

Amounts charged off as depreciation and depletion and not reinvested in the taxable year were retained as reserves for future reinvestment.

During each of the taxable years involved, the net income as computed above was equally divided between Anna M. Chambers and Thalia C. Taylor and one-half of such amount was paid to each of such persons. In their individual returns each of such persons returned one-half of such net income as her distributive share of the income of the trust estate.

Under a similar method of computing the distributive share of each of these beneficiaries, there was due to each of them, from income for the years 1918, 1919, and 1920, $42,995.12. All of such amounts were returned as income in those years and income taxes paid thereon. During those same years, the total paid to the beneficiaries was $20,500 each, leaving undistributed in the hands of the trustees on January 1, 1921, net income due each beneficiary of $22,495.12. From the amount so due payments were made to each beneficiary as follows:

| Year | Amount |
|---|---|
| 1921 | $5, 106. 93 |
| 1922 | 5, 921. 64 |
| 1923 | 6, 755. 03 |

The Commissioner rules that the estate was not entitled to deduct any depreciation or depletion. In his brief the respondent concedes that this was error and that depreciation and depletion are allowable in the amounts claimed on the returns, but contends that such amounts do not enter into the computation of the distributive share of each of the petitioners. The Commissioner takes a similar position with respect to the losses suffered on the sale of securities in 1921 and the loss from fire in 1923.

The pertinent provisions of the Revenue Act of 1921 are as follows:

SEC. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

\*        \*        \*        \*        \*        \*        \*

(2) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests;

(3) Income held for future distribution under the terms of the will or trust; and

(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct.

(b) The fiduciary shall be responsible for making the return of income for the estate or trust for which he acts. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, except * * *. In cases in which there is any income of the class described in paragraph (4) of subdivision (a) of this section the fiduciary shall include in the return a statement of the income of the estate or trust which, pursuant to the instrument or order governing the distribution, is distributable to each beneficiary whether or not distributed before the close of the taxable year for which the return is made.

(c) In cases under paragraphs (1), (2), or (3) of subdivision (a) or in any other case within subdivision (a) of this section except paragraph (4) thereof the tax shall be imposed upon the net income of the estate or trust and shall be paid by the fiduciary, * * *

(d) In cases under paragraph (4) of subdivision (a), * * * the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not *. * *.

The plan of the revenue act is to tax annually to the beneficiary of any trust his distributable share of the income of the trust for such year and to tax to the trustee in his fiduciary capacity any income which is not distributable. The act thus presents, in the computation of taxable income the same problems which are presented to a court upon an accounting in determining whether items of income or expenditure are to be credited to or charged against the beneficiary or the remainderman. Ordinarily gains or losses from the sale of capital assets do not affect the computation of the income of the beneficiary but are chargeable to the corpus of the fund. The same is ordinarily true of depreciation of assets and depletion of natural resources, especially if exhaustion thereof had begun before the trust became effective. In such cases the distributable income of the beneficiary is to be computed without reference to such items, which must be accounted for by the trustee in the return of undistributable income which he must file for the estate and upon which the estate, and not the beneficiary, is taxable. *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428; *Arthur H. Flemming*, 6 B. T. A. 900; *Louise P. V. Whitcomb*, 4 B. T. A. 80; affd. *Whitcomb* v. *Commissioner*, 25 Fed. (2d) 528; *Roxburghe* v. *United States*, 64 Ct. Cls. 223; *Kate Fowler Merle-Smith*, 11 B. T. A. 254; *Elizabeth M. Abell*, 4 B. T. A. 87. It is upon this principle and these decisions that respondent relies. The basis of each of these decisions is that the income of the beneficiary is not affected by the loss in question and it is plainly indicated in some of them that the situation would be different if the trust instrument were so framed that the loss served to reduce his income. Indeed, it needs no argument to demonstrate that since it is only

the distributable net income of the beneficiary which is taxable to him, any loss which serves to reduce his income from the trust must be taken into account in the computation of the amount upon which he is to be taxed. We have so held in *John S. Ames*, 9 B. T. A. 1336; *E. L. E. Brenneman*, 10 B. T. A. 544; *Kate M. Simon*, 10 B. T. A. 1186; *John L. Whitehurst*, 12 B. T. A. 1416. The rulings of the Bureau of Internal Revenue have been to the same effect. T. D. 2267; Comm. Rec. 3959, II–2 C. B. 162; G. C. M. 5479, VIII–1, 6.

The question for decision in the last analysis is whether these petitioners are entitled to receive the income of the trust estate undiminished by depreciation and depletion of the buildings and oil properties and by losses upon sales and from fires or whether the trustees properly reduce their distributable shares on account of these items. Stated in other words, could these petitioners, upon an accounting by the trustees, successfully contend that the trustees were in error in withholding these amounts out of income and require that the whole of the operating income be distributed to them without making any deduction for depreciation, depletion or losses. The provision of the will with which we are immediately concerned directs the trustees " to keep said estate together and intact as to principal except as hereinafter provided, and the income thereof to divide into two equal portions." The parties concerned have interpreted this to mean that the capital is to be kept intact by reserving a sufficient amount out of income to provide for depreciation and depletion of capital assets of a wasting nature. In a similar situation, in *E. L. E. Brenneman*, *supra*, we said:

Prior to the years in question the trustees, with the acquiescence of the beneficiaries, interpreted the directions of the decedent to mean that only "net income" of the trust estate, as that term is used in the taxing statutes, should be distributed to the beneficiaries. Accordingly, they set up reserves to conserve the corpus of the trust. In 1917 and 1918, as well as the years in question, the trustees took deductions for depreciation and depletion of the oil-producing property and distributed to the beneficiaries only the net income so determined.

It is strenuously urged by the petitioners that the interpretation thus placed on the will can not be collaterally attacked. It is undoubtedly true that as between the parties in interest an interpretation of long standing placed on the instrument by them will not be disturbed and the courts of Pennsylvania have so held. *Appeal of Follmer*, 37 Pa. 121; *Hagerty* v. *Albright*, 52 Pa. 274. We are not inclined therefore lightly to cast aside or disregard the interpretation placed upon the trust instrument by the parties thereto and adopt a contrary view as a basis for the taxes in question. See *Grace Scripps Clark*, 1 B. T. A. 491. We think that the decedent's will is susceptible of the interpretation placed thereon by the parties in interest, and, consequently, we hold that the deductions for depreciation and depletion, the amounts of which are not in dispute were properly taken by the trustees and do not constitute income to the beneficiaries.

See, also, *Kate M. Simon, supra*, and *John L. Whitehurst, supra*.

In construing a will the intention of the decedent is to be sought. The only evidence in the record which can serve as our guide is the language of the will and the construction placed upon it by his wife, daughter and trustees, consistently maintained since his death. They are the parties who are most likely to know what was intended. Moreover, the direction that the principal be kept intact must be given some significance. The Commissioner has distributed the income as if these words were not in the will. Occurring in the will of one who owned depletable assets, the construction given them by the interested parties seems to us entirely reasonable and proper. We are accordingly of the opinion that the distributable income of the trust estate is only the amount of income remaining after the deduction of the reserve for exhaustion and after capital losses have been made good.

The stipulations of fact and the briefs of the respondent point out that during the taxable years there was distributed to the petitioners not only their distributable share of the income of each of those years, but payments from distributable income of prior years. This seems to us to be of no importance. The law provides that the beneficiary shall include as his income his distributable share of the income, whether or not distributed. Amounts which properly became distributable in prior years were taxable in those years, not in the years of distribution and distribution in the years before us can serve neither to increase the taxable income of those years nor to affect the construction of the will.

*Decision will be entered under Rule 50.*