ANNA M. CHAMBERS AND WILLIAM J. GEALY, TRUSTEES UNDER THE LAST WILL OF FRED N. CHAMBERS, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 55713, 64538. Promulgated February 1, 1934.

*James H. Courtney, Esq.*, for the petitioners.
*C. R. Marshall, Esq.*, for the respondent.

#### OPINION.

ADAMS: These proceedings, which have been consolidated, involve proposed deficiencies in income tax of $1,042.36 for the year 1927 and $410 for the year 1929. The sole question for determination is

whether the gain realized from the sale of certain securities and real estate is taxable as income to the trust estate or to the beneficiaries. The cases were heard by Honorable William D. Love, now deceased.

The petitioners are the trustees of the estate of Fred N. Chambers, who died testate in May 1918 and by his last will and testament (included herein by reference), admitted to probate in Pennsylvania, provided for the distribution of his residuary estate as follows:

THIRD—And all the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and wheresoever situated, of which I may die seized or possessed, I give, devise and bequeath unto my said wife, Anna M. Chambers and William J. Gealy, and the survivor of them, to have and to hold jointly, IN TRUST, nevertheless, for the following uses and purposes, and not otherwise, to-wit:

a.—To manage and control the said estate, sell and dispose of any part or all of my personal and mixed property, lease, sell and dispose of all or any part of my real estate, upon such terms and conditions and for such price or prices as to the said trustees, or the survivor of them shall seem proper, and to make, execute and deliver good and sufficient leases, deeds and conveyances for said real estate, or any part thereof, and to receipt for the rentals and considerations thereof; to borrow money when said trustees may deem it necessary in the proper management of said estate, and to pledge said personal property and mortgage said real estate and mixed property to secure the same; to operate said real estate and leaseholds for oil, gas, or other purposes; to receive all moneys due said estate from any source and to invest the same and to change investments and make new investments, and in general to do all other things in the premises which said trustees or the survivor of them, shall deem for the best interests of the estate, and all said property to have and to hold for the following uses and purposes and not otherwise.

b.—To keep said estate together and intact as to principal except as hereinafter provided, and the income thereof to divide into equal portions; one-half of said income, or so much thereof as may be necessary, is to be used by said trustees for the support and education of my daughter, Thalia Lee Chambers, until she shall arrive at full age, and after she shall be of full age, said trustees shall pay over to her, the said Thalia Lee Chambers, during her natural life, so much of the income from said one half of my said residuary estate, as in the discretion of said trustees may be proper and necessary for her proper use and maintenance, in a suitable manner; said estate and income, however, not to be liable in any way for the debts, contracts, or liabilities of my said daughter, Thalia Lee Chambers, or any husband she may have; provided, however, that said trustees, should they deem said income not sufficient for the proper education or maintenance of my said daughter, may use so much as may be necessary of the principal for said purposes; and further, said trustees, after my said daughter shall be of full age may allow her such control over said estate or any part thereof as in their judgment may be to her best interests, and may after she becomes of full age, assign or pay over to her, absolutely, a part or all of the principal of her share of said estate; any income from said half of said estate, not used for my said daughter nor paid over to her, shall be kept separated and invested for her benefit and shall not go in any way to increase the remaining one-half of said estate; at the death of my said daughter, all of said one-half of said residuary estate and accumulated income not distributed shall be paid to the lawful issue of said Thalia Lee Chambers, if she leave any to

survive her, and if she leave no lawful issue then it shall be paid to my said wife, Anna M. Chambers.

c.—The income from the remaining one-half of said residuary estate is to be paid by said trustee at least semi-annually, to my said wife, Anna M. Chambers, during her natural life, and at her death the undistributed principal from which said income is derived, is to be paid as she may by her will direct, and if she leave no will to the persons who under the intestate laws of the State of Pennsylvania would be entitled to her estate, and in the same proportion as they would take under said intestate laws; neither said principal however nor income shall be liable to attachment in the hands of said trustees, for any debts, contracts or liabilities of my said wife, Anna M. Chambers, after my daughter becomes of full age, however, and should at any time thereafter said trustees, or the survivor of them, determine to pay over and distribute to my said daughter any share of the principal of my said estate as hereinbefore provided, then they shall at the same time likewise pay and distribute to my wife a like part of her share of my estate, so that the principal of said estate in the hands of said trustees, or the survivor, shall always be held by them, one-half for my said daughter, and one-half for my said wife, and no distribution of said principal shall be made to one of the two, without the making of a like distribution to the other. * * *

Anna M. Chambers is the widow of decedent. Thalia C. Taylor, referred to in decedent's will as Thalia Lee Chambers, is the daughter of the decedent. She attained the age of 21 years in 1919.

For the taxable years before us petitioners rendered Federal income tax returns for the estate of Fred N. Chambers on Form 1041, which disclosed net income amounting to $25,328.38 for 1927 and $22,170.48 for 1929. Such income was indicated in these returns as distributable in equal portions to Anna M. Chambers and Thalia C. Taylor, who included such alleged distributable amounts in their individual income tax returns for those years.

Included in the income reported by the estate for 1927 and 1929 as distributable to the beneficiaries were gains from the sale of stocks in domestic corporations and from the sale of a certain building formerly belonging to the Chambers Hardware Co., in the respective amounts of $21,173.66 and $15,491.10.

At the time of his death Fred N. Chambers was the owner of 694 shares out of a total of 1,000 shares of the issued capital stock of the Chambers Hardware Co., then insolvent. In 1919 the Chambers Hardware Co. was liquidated and the trustees acquired the building known as the Chambers Hardware Co. Building at a cost of $7,000. Upon sale of this building a profit was realized in the amount of $2,028 in the year 1929.

In his audit of the returns of petitioners for the trust estate (Form 1041) for the year 1927, the respondent accepted the amount of gains from the sale of stocks as set out above. For the year 1929 he determined the gain to be $15,500.09. There is no dispute as to the amounts as thus determined. He determined, however, that these gains were taxable to the trust estate and not to the beneficiaries.

974

The Commissioner considered that the profits from the sale of the corpus of the estate were not part of the income of the estate which was distributable, and that such gains were taxable to it, since they were gains accumulated to the corpus of the estate and became part of the corpus and were not income from the operation of the property of the estate.

The petitioners contend that the gains derived from the sale of stock and the building purchased in 1919 are not different from other income of the estate obtained as rents, dividends, etc., and are taxable to the beneficiaries as distributable income of the estate, whether distributed to the beneficiaries or not. They urge that all income received by the trust over and above the amount necessary to keep the estate intact must be distributed to the beneficiaries under the provisions of the will and the laws of the State of Pennsylvania. Our attention is called to the Pennsylvania statute, Act of 1853,[1] which provides that no person shall by any deed, will or otherwise, settle or dispose of any real or personal property so that the rents, issues, interest, or profits thereof shall be accumulated for any longer term than the life of the grantor, settlor, or testator and during the minority of the person, who, under the instrument directing such accumulation, would, if of full age, be entitled to the rents, issues, interest, or profits so directed to be accumulated, and in every case where a direction shall be otherwise, such direction shall be null and void, and such rents, issues, and profits shall go to the person who would be entitled thereto if such accumulation had not been directed. It is argued that under the provisions of the will construed in connection with this statute the trustees have no power to hold any income or profit derived from the trust estate, except such amounts as may be necessary to keep the principal " intact ", and all property coming into their hands in excess thereof is income distributable to the beneficiaries. We do not agree with this contention.

Petitioners urge that the value of the estate at the time of the death of the testator fixed by the Treasury Department for estate tax purposes is to be treated as the " intact principal ", and rely upon our decision in *Anna M. Chambers*, 17 B.T.A. 820. While that case involved the same trust estate as the one before us, it differs from this case in very material respects. In that case the question before us was whether the beneficiaries were entitled to receive the income of the trust estate undiminished by depreciation and depletion and by losses upon sales of securities and from fires. There, referring to the direction in the will " to keep said estate together and intact as to principal except as hereinafter provided," we said : " The parties concerned have interpreted this to mean that the capital is to be kept intact by reserving a sufficient amount out of income to provide

---

[1] Pennsylvania Statutes (1920), sec. 18868—Act of April 15, 1853, P.L. 503.

for depreciation and depletion of capital assets of a wasting nature ", and we gave effect to the interpretation placed upon the will by the parties in interest, and held that the distributable income of the trust estate is only the amount of income remaining after the deduction of the reserve for exhaustion, and after capital losses have been made good. The question of whether the profit realized on the sale of a capital asset is part of the principal or is income distributable to the life beneficiaries was not before us. In the *Chambers'* case we said:

The plan of the revenue act is to tax annually to the beneficiary of any trust his distributable share of the income of the trust for such year and to tax to the trustee in his fiduciary capacity any income which is not distributable. The act thus presents, in the computation of taxable income the same problems which are presented to a court upon an accounting in determining whether items of income or expenditure are to be credited to or charged against the beneficiary or the remainderman. Ordinarily gains or losses from the sale of capital assets do not affect the computation of the income of the beneficiary but are chargeable to the corpus of the fund. * * *

The reason in that case that the losses did affect the computation of the income of the beneficiary was the fact that they were made up from income and reduced the distributable income. This was due to the direction in the will to keep the principal intact.

The interpretation which petitioners now seek to give the will would preclude the addition to the principal of any capital gain whatsoever during the continuance of the trust. This we think is contrary to the intentions of the testator and to the laws of Pennsylvania. Nor does it appear that the parties in interest have adopted that construction, for there is no evidence that the trustees distributed all income and profits, including the capital gain in question, to the beneficiaries during the years before us.

*In re Waterhouse's Estate*, 308 Pa. 423; 162 Atl. 295 (decided by the Supreme Court of Pennsylvania in 1932), involved the apportionment, between the life tenant and the remainderman of a trust estate, of the proceeds received from the sale of stock. In the opinion the court said:

The value of a trust estate, where its income is paid to life tenants with remainder over, is determined as of the time the testator dies and is called intact value. It is so named because that *value is to be kept intact for remaindermen* in the various subsequent distributions of income that might impair it. * * * Intact value may be increased by stock purchases, contributed surplus or any other capital increase not attributable to earnings, *Dickinson's Estate*, 285 Pa. 449, 453, 132 A. 352; *Packer's Estate*, (No. 1) 291 Pa. 194, 197, 139 A. 867; *Jones* v. *Integrity Trust Co.*, 292 Pa. 149, 140 A. 862, and it is subject to capital losses. *Dickinson's Estate, supra; Packer's Estate, supra.*

The court held that, where stock is sold for a price greater than the intact value and the increase is due to the accumulation of income, the proceeds are apportionable, the trustees receiving as much as is

necessary to preserve the intact value and " only so much of the balance that represents income goes to the life tenant."

But where the greater value is due to the stock's earning power, good will, or its intrinsic, speculative, or enhanced market value, all the proceeds are part of the corpus and belong to the remainderman; the increase is capital gain. See *Nirdlinger's Estate*, 290 Pa. 457, 462, and authorities cited on page 479, 139 A. 200, 56 L.R.A. 1303.

The presumption is that the proceeds from the sale of stock belong to the corpus of the trust, and the burden of proving that they do not rests on the person asserting a claim to them. *McKeown's Estate*, 263 Pa. 78, 85, 106 A. 189; *Nirdlinger's Estate, supra*.

Clearly, under the laws of Pennsylvania, capital gain from the sale of stock becomes a part of the corpus and is not distributable to the life tenant as income from the estate. Only where such gain is shown to represent income is it distributable to the life beneficiaries. Here there is no showing that any of the gain in question represents income. Petitioners argue in their brief that certain shares of the stock sold were purchased from accumulated income, but there is no evidence of this fact before us.

Admitting that all income from the trust estate was distributable to the beneficiaries, and taxable to them whether distributed or not, the corpus, or any part of it, was distributable only at the discretion of the trustees. The capital gain which became a part of the corpus of the trust is not income distributable under the will to the beneficiaries, and is not taxable to them. Cf. *William H. Hotchkiss Estate*, 16 B.T.A. 1334; *Marion Shainwald Sevier*, 14 B.T.A. 709. The petitioners have failed to show that any part of the gain here in question was from income or that it was actually distributed. They have, therefore, failed to overcome the respondent's determination.

Reviewed by the Board.

*Decision will be entered for the respondent.*