## Fry *v.* Stetson, Appellant.

Argued March 17, 1954. Before Rhodes, P. J., Hirt, Ross, Gunther, Wright, Woodside and Ervin, JJ.

*Raymond J. Porreca,* with him *Raymond A. White, Jr.* and *Brunner & Conver,* for appellants.

*Michael H. Egnal,* with him *Cassin W. Craig* and *Wisler, Pearlstine, Talone & Gerber,* for appellee.

OPINION BY ERVIN, J., July 13, 1954:

This is an appeal by defendants from the entry of judgment on the pleadings in favor of the plaintiff in an action in ejectment to recover possession of an undivided five-eighteenths interest in premises known as Pleasant Valley and for mesne profits.

The facts disclosed by the pleadings reveal that under the will of John B. Stetson, who died in 1906, his son, G. Henry Stetson, was given a right or privilege to use and occupy a property known as Pleasant Valley, free of rent, taxes, and all ordinary and necessary repairs. Under the terms of the will testator's trustees were directed to keep the property in good repair at the expense of the residuary estate. Since 1928, G. Henry Stetson has not occupied the property but has permitted the premises to be used and occupied by appellants, Helen B. Stetson, his divorced wife, and Elizabeth Allen and Ann Norris, his daughters. In March, 1928 G. Henry Stetson, John B. Stetson, Jr., and Elizabeth, Countess of Eulalia, widow of John B. Stetson, who were at that time the beneficiaries of the residuary estate, entered into a family agreement whereby they released the trustees under the will of John B. Stetson from any liability for failure to treat the premises involved as part of the residuary estate of John B. Stetson and permitted the trustees to continue the maintenance of the property for the benefit of the appellants so long as the parties thereto remained alive. In January 1930, upon the death of John B. Stetson's widow, Elizabeth, Countess of Eulalia, the

remaining beneficiaries, John B. Stetson, Jr. and G. Henry Stetson, reaffirmed the former agreement and provided inter alia "that all the terms of the said agreement shall be continued until the death of either one of them, when it shall absolutely cease and determine." On June 8, 1946, through execution on a judgment, appellee acquired the five-eighteenths interest of John B. Stetson, Jr. in Pleasant Valley, which interest had become vested in him by inheritance and conveyance. As of November Term, 1947, No. 17, the appellee here brought a bill in equity for the partition of Pleasant Valley in the Court of Common Pleas of Montgomery County, praying for an immediate partition of her debtor's then existing interest in the premises. That case was ultimately disposed of by the Supreme Court of Pennsylvania. *Fry v. Stetson,* 370 Pa. 132, 87 A. 2d 305. The Court, speaking through Mr. Justice BELL, held that the partition action was premature as appellee's right to possession had not vested at that time because of appellants' prior right to possession of the premises under the terms of the written family agreement then in effect. After the death of John B. Stetson, Jr. on November 14, 1952, demand was made upon the appellants to execute a lease for five-eighteenths of the fair rental value of Pleasant Valley or to remove therefrom. Upon the refusal of appellants to do either, appellee filed her complaint in ejectment. The court below granted appellee's motion for judgment on the pleadings and directed that a judgment for possession be entered in favor of the appellee and against the appellants, and further provided that the amount of mesne profits due the appellee was to be determined at a trial.

Appellants' principal contention is that the testator in the instant case created a life estate in G. Henry Stetson and they hold under and subject to the rights

of the life tenant; and therefore, the appellee, who has an undivided five-eighteenths interest, has said interest only as a remainderman and is not entitled to bring an action in ejectment against the appellants, during the lifetime of G. Henry Stetson. This contention is based on the conclusion that the use of the words "use and occupy" contained in Item 3 of the testator's will created a life estate in G. Henry Stetson. Item 3 of testator's will provided: "I direct the Trustees hereinafter named to keep in good order and repair the properties know as the Cox property and Pleasant Valley, and in case my Son, JOHN B. STETSON, JR., should care to use and occupy said Cox property in case of his marriage, he may do so at his pleasure, free of rent, taxes and all ordinary and necessary repairs. AND my Son, G. HENRY STETSON shall have the like privilege as to Pleasant Valley, House, Barn and Stable, with about five acres of land, in case of his marriage, free also of rent, taxes and repairs. My Trustees to always keep the said properties in good condition at the expense of my residuary estate."

Interpretation of this provision in testator's will was involved in the prior suit brought by the appellee for partition in equity noted supra, wherein it was contended "that G. Henry Stetson was devised only a personal license to use and occupy Pleasant Valley; that he abandoned this license, and consequently Pleasant Valley became a part of testator's residuary trust estate, . . ." See *Fry v. Stetson*, 370 Pa. 132, 133, 87 A. 2d 305.

However, in the *Fry* case the Supreme Court, in an opinion which is decisive of appellants' contention here that the will of John B. Stetson created a life estate in Pleasant Valley in G. Henry Stetson, determined that it was unnecessary to decide what his exact inter-

est was in the premises at his father's death because of the family agreements entered into by the residuary legatees. The Court, speaking through Mr. Justice BELL, decided that the present appellants were entitled to possession, *not by reason of the will of John B. Stetson, but by virtue of the various family agreements.* (Emphasis added) In interpreting the agreement of January 2, 1930 between John B. Stetson, Jr. and G. Henry Stetson, Mr. Justice BELL stated at page 134: "This agreement ratified the first agreement with the modification that the agreement and *hence the occupancy of Pleasant Valley was to terminate upon the death of either John or G. Henry Stetson.*" (Emphasis added) And in his consideration of the effect in construing the will of the several family agreements involved in this proceeding, Mr. Justice BELL said at page 135: "Family agreements or settlements are always favored in the law and when fair are valid and will be upheld whenever possible: Edelman's Estate, 336 Pa. 4, 10, 6 A. 2d 511; Iacovino v. Caterino, 332 Pa. 556, 2 A. 2d 828; Braunschweiger's Estate, 322 Pa. 394, 185 A. 753. Speaking with more particularity, family agreements construing wills are, in the absence of fraud, binding (Strawbridge's Estate, 322 Pa. 406, 185 A. 726; Wilen's Appeal, 105 Pa. 121), even though based on an error of law: Disston Estate, 349 Pa. 129, 36 A. 2d 457; Follmer's Appeal, 37 Pa. 121; Hunter, Orphans' Court Commonplace Book Vol. 1, pp. 519, 522, 525."

It is clear that the interest of G. Henry Stetson in Pleasant Valley is determined by the family agreements he entered into with his mother and brother. When the agreement of January 2, 1930 was terminated by the death of John B. Stetson, Jr., the appellants' right to possession of Pleasant Valley also terminated. The premises, therefore, became part of the residuary

estate and appellee has the right to possession of her five-eighteenths interest.

Appellants' contention that it was error to enter judgment for possession in favor of the appellee without joinder of the other owners is without merit. It is well settled that each tenant has an equal right to the possession of the whole. The rule is stated in 62 C. J., §30, p. 423, as follows: "A tenant in common has an interest in the possession of every part of the property, and from the nature of the estate must necessarily be in possession of the whole and has the right to occupy the whole of the common property and every part thereof, and cannot be ejected for occupying more than what would be his share of the premises on partition; nor can the rights to possession of the premises, which all tenants in common of the property are entitled to as between themselves, be affected by the acts of one dispossessing another by force or fraud." See *Kline v. Jacobs,* 68 Pa. 57; *Peterson et al. v. McNeely,* 125 Pa. Superior Ct. 55, 189 A. 765.

It is also stated in 62 C.J., §30, p. 424: "A tenant in common is entitled to possession of the common property as against all the world save his cotenants; and no one can complain of the exclusive use of the common property by one tenant in common except his cotenant." It is also well settled that a tenant in common can maintain an action in ejectment to recover possession of his own interest in the common property. *Schuldt v. Reading Trust Co. et al.,* 292 Pa. 327, 141 A. 152; *Mobley v. Bruner,* 59 Pa. 481; See 14 Am. Jur., Cotenancy §95.

Under the circumstances, in the instant case, the appellee has a right to possession which is superior to that of strangers to the title.

The cotenants, owners of the other thirteen-eighteenths interest, may, at their option, also enforce their

right to possession or mesne profits by appropriate legal procedure.

Judgment affirmed with a procedendo.