## Bergmann Estate (No. 2)

*Christy, Harry & Jones,* for accountants.

*Duffy, McTighe & McElhone,* for claimant.

TAXIS, P. J., September 9, 1958.—This matter comes before the court upon a petition of Clara E. Bergmann, widow, for review of adjudication dated September 5, 1957, praying: (1) That the court set aside a transfer of certain stocks; and (2) for removal of coexecutors. An answer was filed by the executors denying the material averments of the petition. Respondents have filed contemporaneously a motion for judgment on the pleadings pursuant to Pa. R. C. P. 1034. The matter was extensively argued and briefs submitted to the court on May 12, 1958.

A petition for review of an adjudication will be granted as a matter of right only: (1) Where errors of law appear upon the face of the record; (2) where new matter has arisen since the decree; or (3) where justice and equity require a review and no person will suffer thereby: Osterling's Estate, 337 Pa. 225, 227 (1940). The question therefore is whether the pleadings in their present posture have set forth sufficient facts warranting a review of the adjudication and to permit Clara N. Bergmann her day in court.

Summary judgment on the pleadings under Pa. R. C. P. 1034 should only be entered in cases that are clear and free from doubt. Such a case exists whenever there is no controlling issue of fact raised by the complaint and answer or by the new matter and reply thereto. No such clear case appears in the present controversy and the motion for summary judgment on the pleadings is herewith dismissed.

In considering a motion for judgment on the pleading the court is bound to accept as true all material allegations of fact which are well-pleaded: Fry v. Stetson, 70 Montg. 175, affirmed 176 Pa. Superior Ct. 171, 106 A. 2d 662. With this in mind and examining

the pleadings in this light, do the averments warrant opening the adjudication? A chronological recitation will be helpful to develop the matter in which the present controversy unfolded.

On May 27, 1952, decedent entered into a property settlement with wife no. 1, Mildred Bergmann, which provided for a payment to her of $100 a week for life. On February 10, 1953, decedent executed a will and codicil, which were duly probated, the codicil providing as follows: "I give to Anton Kuhn the option to purchase from my executors fifty-six (56) shares of my common voting shares in Peerless Steel Equipment Company in order to assure my brother, Conrad Bergmann and Anton Kuhn control of the voting shares of said company, at book value as shown by the books of the company at the end of the last fiscal year prior to my decease. This option shall be exercised within one year from the date of my decease."

On June 11, 1953, George Bergmann, decedent, and this claimant, Clara N. Edwards, entered into an antenuptial agreement in which, inter alia, decedent agreed to direct the executors to pay to Mrs. Bergmann, this claimant, wife no. 2, $25,000 within one year of the date of his death and also the additional sum of $100 per week for life or until Mrs. Clara Bergmann remarried. This antenuptial agreement specifically provided that decedent's first wife, Mildred Bergmann, had a prior claim against this estate for $100 a week for life or until she remarried. The antenuptial agreement also recited that there was attached to it a copy of decedent's will dated February 10, 1957, and a codicil of the same date. A copy of the will was in fact attached but no copy of the codicil was attached to the copy of the agreement. Moreover, Mrs. Bergmann was not represented by legal counsel at the time of the execution of the antenuptial agreement. George Bergmann agreed not to change his will insofar as the pro-

visions for the said Clara N. Edwards were concerned, but the agreement did provide as follows: "He shall, however, have the right to otherwise change his will; including the right to make provisions for cash legacies up to the amount of fifty-thousand dollars ($50,000) or give such options or other right to buy property belonging to him as he may see fit."

Decedent died on March 19, 1954, his will and codicil were probated on March 26, 1954, and letters testamentary granted to Anton J. Kuhn and Erich O. Angermann, Esq. On March 18, 1955, Anton J. Kuhn, executor, executed the option and on that date purchased 56 shares of common stock of the Peerless Steel Company at a price of $355.85 a share or a total consideration of $19,927.60.

On May 1, 1957, the coexecutors filed their account, on page 4 of which appeared the following entry:

"1955

"Mar. 18. To proceeds of 56 shares of
voting stock of Peerless
Steel Equipment Company,
transferred to Anton J. Kuhn
upon his exercise of option
in Will at $355.85 .. .... $19,927.60
Inventoried at .......... 9,637.60
                        _____
                        $10,290.00

Less Income Tax on
                        _____
Capital Gain .......... 385.29  $9,904.41."

After the filing of this account, the account was listed for audit on June 3, 1957, at which time this estate was called for audit. On that date the court was advised that there was a claim to be heard requiring testimony and the matter was scheduled for hearing on June 7, 1957, at which time audit was conducted and hearing on the claim and testimony taken thereon.

The claim presented at the time of audit was a claim by the widow, Mrs. Clara Bergmann, for a Cadillac automobile which she claimed as a gift donatio mortis causa from decedent. The court, after hearing, sustained her claim and awarded the Cadillac car to Mrs. Bergmann: Bergmann Estate 13 D. & C. 2d 784. It is important to observe that at the June 3 and June 7 audits all parties understood, believed and acted in accordance with said belief that there would be some Federal tax liability but all were clearly of the opinion that there were sufficient funds not only to pay these Federal estate taxes but also to pay the claim of Mildred Bergmann, wife no. 1, and to pay fully the widow-claimant, Clara Bergmann, her claim. The account as filed showed a balance for distribution of $200,703.58, and a balance of income for distribution of $17,958. The claim of wife no. 1 and the claim of Clara Bergmann were conceded to be correct by the accountants, admitted, and the court in its adjudication made awards on the strength of the admission of the parties that there were sufficient funds to pay taxes, wife no. 1 and wife no. 2, in full. On September 5, 1957, the adjudication of this court was handed down in which the claim of Clara Bergmann for the Cadillac car was sustained and awarded to her together with awards made to Clara Bergmann and Mildred Bergmann: Bergmann Estate, supra.

Two days before this adjudication, namely, on September 3, 1957, the accountants were advised that additional Federal estate tax liability of this estate would approximate $70,000, and it is this after-acquired information and facts which upset the plan and scheme of distribution as originally contemplated by the parties in June 1957, when the audit was heard.

It is conceded by Mrs. Clara N. Bergmann that the additional Federal estate taxes and a claim payable to decedent's first wife represent claims prior to that of

claimant. Federal estate tax liability is estimated to be $70,322.52, and the value of the first wife's interest is alleged to be approximately $85,000. In addition, counsel fees and executors' commissions of some $15,000 bring the total claims payable and those which are prior to Clara Bergmann to approximately $170,000.

The $100 payable to Clara Bergmann stopped during the month of September 1957, when the executors first learned that tax liabilities may amount to $70,000, and up to that time Mrs. Clara Bergmann had been paid only $2,000 on account of the $25,000 claim which the court had previously awarded. The reply of the executors was that the bulk of the assets of the estate, namely, approximately $125,000, is composed of the stock of the Peerlees Steel Equipment Company and so long as this property remained unsold no sum could be paid to claimant without exposing the executors to possible surcharge.

Although the antenuptial agreement gave the husband no right to grant options, he had the right to grant only such options as were consonant and consistent with the rights of the wife under that antenuptial agreement. He can hardly be deemed to have intended to give the wife certain vested rights in the first part of his antenuptial agreement and then effectively nullify them later on in the agreement.

The option therefore given to Kuhn must be viewed in the light that prior vested rights are not to be disturbed by the exercise of such an option and thereby to take away effectively from a contracting party, particularly a widow-creditor, important and valuable rights. Nor can the executors find any comfort in the fact that the account had set forth the exercise of this option by Mr. Kuhn on March 18, 1955. Mrs. Bergmann did not object to the account or challenge the transfer of the 56 shares of stock because she together

with all the other parties believed, as also did the accountants, that her rights under the agreement were fully protected and that there were adequate funds to pay her in full. Subsequent events, unknown to anybody at the time of the June audit, proved that the widow-creditor was wrong and that her rights are now in jeopardy by reason of the fact that the Federal estate tax liability has increased in amount greatly in excess of all expectations. No one expected the tax liability to be anywhere near the $70,000 which now seems possible. The imprimatur placed on an account by a court's adjudication was certainly never intended to provide a cloak which accountants may draw about them and insulate the transaction set forth in this account from any onslaught where, as here, strong equitable considerations entitle a widow-creditor to her day in court, particularly where new matters have arisen since the confirmation which clearly warrant a review, and where no distribution has taken place pursuant to the decree of distribution.

The executors, at the June 1957 audit, sincerely and genuinely believed that they had sufficient assets to pay taxes and claims of wife no. 1 and wife no. 2. When, however, it became obvious that the scheme of distribution could not be carried out, claimant wife no. 2 promptly without any delay initiated proceedings to claim the rights which were given up or released by her nonobjecting to the account in the light of the new facts.

### Decree

And now, September 9, 1958, after full and careful consideration of the pleadings, the written briefs and oral arguments of counsel, the court is of the opinion that petitioner is entitled to the relief prayed for, and it is hereby ordered, adjudged and decreed as follows:

1. The petition for review of adjudication filed on behalf of Clara N. Bergmann, widow-creditor of de-

cedent, is hereby granted and the adjudication of this court dated September 5, 1957, is opened and Clara N. Bergmann is permitted to file objections nunc pro tunc to challenge and to seek to set aside the transfer of 56 shares of stock pursuant to option granted under the codicil of February 10, 1953.

2. Since it is clear that testimony will be required and a hearing held on this stock transfer issue, the court is of the opinion that justice requires that the issue of removal of the coexecutors, raised by the petition for review, also be heard and disposed of at the same time, and it is so ordered.